[Crim. No. 2923. Second Appellate District, Division Two.—January 20, 1937.]

THE PEOPLE, Respondent, v. CHARLES HIGGINS et al., Appellants.

596

Gladys Towles Root, David B. Larimer, Frederic H. Vercoe, Public Defender, and William B. Neeley, Deputy Public Defender, for Appellants.

U. S. Webb, Attorney-General, and R. S. McLaughlin, Deputy Attorney-General, for Respondent.

CRAIL, P. J.—The defendant Higgins was convicted of (forcible) rape and assault. The defendant Albert Jackson

was convicted of·rape.. Each of the defendants appeal from the judgment against him.

Viewing the evidence in the light most favorable to the prosecution, Mrs. Dorothy Frakes, the prosecutrix, was a married woman, twenty-three years of age, and lived with her husband and infant daughter. She testified that at about 1:30 A. M. on May 17, 1935, following an argument with her husband, she left her home with the intention of visiting a girl friend who worked at the Chicago Cafe on Fifth Street near Los Angeles Street. *While waiting for a street car a former gentleman friend of the prosecutrix passed by in his automobile, stopped and took her to Fifth and Los Angeles Streets.* As she walked toward the Chicago Cafe, which she then noticed was closed, she testified that a large sedan drove up to the curb adjacent to where she was walking and a voice called, ''Get in, she is waiting'', (this in spite of the fact that she had sent no word to her girl friend and she could not have been waiting) ; that as she *started to get in* she noticed that the two occupants were negroes. She started to step back but defendant Higgins took hold of her arm and pulled her into the car. She made no outcry. She was placed in the front seat between the two men and told to keep her mouth shut. This car was driven on various city streets for some time and finally to a store building where defendant Higgins got some money to buy whiskey. They then drove around some more, stopping at several homes trying to buy liquor. After buying some whiskey they drove to Higgins' home, a rear house, drove into the alley and put the car in a garage. All three got out and entered the house. Defendant Higgins was preparing to move and there were no lights in the house, so a coal oil lamp was lighted. All sat down in a bedroom, the prosecutrix being seated on the bed, and the bottle was passed around. Mrs. Frakes testified that she took only a swallow. The prosecutrix says that after sitting there awhile defendant Jackson told her to take her clothes off, but that she refused. She was wearing a red dress, underskirt, step-ins and slippers. On her refusal, she testified, Jackson jerked off her dress and underskirt, but that when he tried to take off her underwear she held on and he shoved her over on the bed and ''He tried to take it away from me . . . '', and she proceeds with details of the alleged

rape, all of which occurred while she was forcibly being held as a prisoner in the small dwelling. The prosecutrix relates that for an instant, at approximately 7 A. M., she was alone in the room and attempted to escape, all the time crying and hysterical; that she opened a French window and tried to push out the screen; that Higgins jerked her back, struck her on the head with a whiskey bottle, and told her to stay away from the window. At about 7:30 A. M., Higgins took her to a small grocery store just a few doors from the house and left her there. He returned a few minutes later and gave her her coat which had been left in his house. Mrs. Frakes was crying and hysterical at the store and she says she cried all the time she was in the company of the defendants and continually kept asking to go home. Mrs. Frakes was taken from the grocery store to the police station, where one of the officers testified that he noticed bruise marks on her legs. On searching Higgins' home, Mrs. Frakes' underskirt and a shoulder strap from it were found in one of the bedrooms. None of the evidence of the defendants is included in the above.

Defendant Jackson devotes approximately twenty-five pages of his opening brief in presenting his first contention that the evidence offered by the prosecutrix is so inherently incredible that it does not as a matter of law sustain a conviction upon the charge of forcible rape. Upon the record before us the question is a debatable one, but for reasons hereinafter stated it will not be necessary for us to decide the matter.

Two witnesses for the defendants, Jesse E. Jones and Alberta Jones, testified that they lived next door to the home of Charles Higgins and were there on the morning in question. Mr. Jones testified that he was in the yard at a point about twelve to fifteen feet from the place in which the alleged crime was committed and at the time was facing the window from which the complaining witness said she attempted to escape. He saw "a light individual" standing at the window of Higgins' home and heard a female voice. The person was not crying or hysterical, and he overheard a part of the conversation. When he was asked to repeat the conversation the district attorney objected that no proper foundation had been laid for the conversation. The objection was sustained

and the evidence excluded. This ruling was erroneous. ▮
No foundation was necessary. The question called for evidence of what happened as a part of the very transaction for which the defendant was being tried. In the light of the record and the weakness of the case before us, we are unable to say that there has not been a miscarriage of justice. It is not a sufficient answer under the circumstances to say that no offer of proof was made of the conversation which was excluded. Any conversation under the circumstances would have been material and it cannot be said that there was nothing to show its purpose, materiality and relevancy. Our courts will not permit the prosecution to produce evidence of a transaction upon which the very charge is based and deny to the defendant the privilege of producing evidence of the same transaction.

▮ In our view of the record also the defendants were unreasonably restricted in their cross-examination of the prosecuting witness. It has been repeatedly held that in cases of this nature the very widest range of cross-examination should be permitted, for the reason that under the law of this state corroboration of the prosecutrix is not required, and the conviction or acquittal of the defendant depends to such a considerable extent upon the credibility of a single witness. (*People* v. *Baldwin,* 117 Cal. 244 [49 Pac. 186]; *People* v. *Benson,* 6 Cal. 221 [65 Am. Dec. 506]; *People* v. *Degnen,* 70 Cal. App. 567 [234 Pac. 129]; *People* v. *Biescar,* 97 Cal. App. 205 [275 Pac. 851].)

The judgments of conviction are reversed.

Wood, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 18, 1937.