[Crim. No. 1657.   Third Appellate District.—March 9, 1939.]

THE PEOPLE, Respondent, v. ROSS MANGUM, Appellant.

R. A. Ferrario and Leo A. Sullivan for Appellant.

Earl Warren, Attorney-General, and J. Q. Brown, Deputy Attorney-General, for Respondent.

TUTTLE, J.—Defendant was convicted before a jury of the crime of rape, by force and violence, and he now appeals from the judgment of conviction and from an order denying a motion for a new trial.

The defendant is forty-four years of age and resides in the city of Tracy, California; he works in the southern part of the state; his wife and he have their home in Tracy. The victim, Janice Amos, is a married woman, thirty years of age, has a nine-year-old child; and also lives with her husband in Tracy. The victim is the niece by marriage of defendant, the defendant's wife and the victim's mother being sisters.

The testimony of the prosecutrix is substantially as follows: On Saturday night, August 13, 1938, defendant and his wife and a third party went to a carnival, which was right off one of the main streets in Tracy. The victim, Janice Amos (whom we will call Janice), and her husband went to the carnival to look for their young son. The victim and her husband had been drinking during the afternoon from about 4 o'clock on, and had consumed about a pint of gin. The parties met at the carnival about 9:30 or 9:45 P. M. and Janice and defendant's wife went on the "Loop-the-plane". While the women were in this machine, the men and the third party went away somewhere, so that Janice and defendant's wife were left by themselves. They then walked over to defendant's home, a matter of a few blocks, and waited for the men. Shortly thereafter, the defendant came to the house. It was then between 10 and 10:30 P. M. All three, the victim, the defendant and his wife (the victim's aunt), then talked about going for a ride, and they drove to a place called the "Shady Inn", located on the west side of

the main highway near the city limits of Tracy, towards Oakland. The defendant and Janice went in, had a couple of bottles of beer, and danced for about a half hour. Mrs. Mangum did not go in but sat outside. While dancing, Janice's skirt became unpinned, but did not fall down. She asked the defendant, her uncle, to pin it for her, and as he did not have a pin, they went outside and defendant's wife pinned it for her. The three then rode around in defendant's coupe and went back to the Shady Inn the second time. This time only the defendant went in and came out with two bottles of beer and a coca cola. Defendant and Janice each drank a bottle of beer sitting out front in the car with Mrs. Mangum. After another half hour or so the three went back to defendant's house. The victim, Janice, was somewhat intoxicated by this time, and was asked by defendant's wife to spend the night. The victim said no, she wanted to go home. Defendant's wife went in the house and defendant and Janice drove off, defendant driving. Instead of taking her home, defendant drove back to the Shady Inn, went in to buy more liquor, and was refused, it being now after 2 A. M. Defendant then drove on towards Oakland about three miles to a place called the ''Cottage Inn''. He there purchased six bottles of beer; they drank one and proceeded to the scene of the crime, which is located about three miles in a southwesterly direction off of the main road, approximately seven-tenths of a mile west of the Cottage Inn, which would make it almost five miles out of the city of Tracy on the main road, and then turning off nearly two and a half miles back into a hilly country where there are no houses, and there is no habitation at all within at least a distance of a mile. That is also an indirect route by which a person could take that road and return to the city of Tracy. They were riding along this deserted roadway when defendant stopped the car; he got out of the car, taking a mat therefrom, and placed the mat upon the ground near the car. Against her protests, and while prosecutrix was struggling to resist him, he dragged her from the car and pulled her down on the ground. She managed to break away from him and started to run away, but he ran after her and caught her, and taking her by the arm, pulled her back to the car. During this time she was pleading with him to desist and let

her alone, but he simply laughed at her. He thereupon pulled up her skirt, pulled off her pants, and while she was struggling and doing all within her power to resist him, consummated an act of sexual intercourse. Soon thereafter he got up from the ground and went around toward the front of the car. The prosecutrix attempted to get in the car again, and he came back and seized her and started to pull her out, and in doing so made some vile and disgusting references as to what he proposed to do. He then accomplished the second act of sexual intercourse, and attempted to make her promise not to tell what happened, under the threat ''you won't go home''. He then proceeded to get into the car while the prosecutrix was with him. He drove her to her home at approximately 4 o'clock in the morning, and she woke her husband, and while still crying, told him what had happened. Her husband then dressed, summoned her father, and subsequently notified the police.

This is not a case where the guilt of the defendant is established entirely by the uncorroborated testimony of the prosecuting witness. There is ample corroboration. Her husband testified that her jaw was swollen; that there were scratches and bruises on her body; that her dress was torn, her shoes broken at the ankle strap and her stockings torn; that there were finger-nail scratches on her face, her legs, and around her waist; that her cheeks were caked with mud; and that she was in an hysterical condition. The chief of police testified that he noticed the bruises and marks, and the torn clothes in the morning. A doctor testified that he found fresh semen on the defendant's trousers. Another doctor testified that the prosecutrix had several scratches on her left elbow, and bruises on her right cheek, and several small bruises on both wrists, a scratch over the right eye and over the right collar-bone region; that there were several scratches over her entire back; and that she had six bluish scratches over her back and buttocks. These were approximately two inches in diameter. There were a number of bluish bruises over both legs,. on both thighs, both in front and behind. When the garments of the prosecutrix were found the next morning at the scene of the crime, they were in a torn condition.

Defendant took the witness stand, and while he testified that he was with the prosecuting witness a portion of the evening, he denied that he ever attacked her or was ever present at the scene of the crime. He stated that after riding around with her and visiting several bars where beer was procured, he took her home at about 2 o'clock in the morning, and that he did not molest her in any way. The wife of the defendant corroborated his story with respect to the time he arrived at his home. Another witness, who was the owner of a resort, testified that defendant was in his place of business from 1:30 to 2 A. M. on the morning in question, and that defendant left said place of business at about ten minutes of 2 o'clock, and that his car was headed towards Tracy.

The chief ground urged for a reversal is alleged error committed by the trial court in sustaining objections to certain questions propounded to the prosecutrix by the defense on her cross-examination. These questions were as follows:

"Now, I will ask you, Mrs. Amos, if you have not been taken home from the town of Tracy to your home, by police officers, while you were in a highly intoxicated condition?"

"Now, Mrs. Amos, I will ask you if it is not a fact that you frequently take your child into public bars and remain there with the child during a period of time while you yourself become intoxicated?"

"Now, I will ask you if it is not a fact that you accused a doctor by the name of Powers of attempting to have sexual intercourse with you?"

"I will ask you if it is not a fact that you accused a man by the name of Merton Bill or Bell, the owner of a pharmacy, of having attempted to have sexual intercourse with you?"

"I will ask you if you did not accuse a man by the name of Arthur Stormer of going out with you and desiring to leave his wife and children and elope with you?"

"I will ask you, Mrs. Amos, if you know a man by the name of Glenn Stewart? I will ask you whether or not

you have not been out with him at night when you were married?"

The foregoing questions were addressed to the witness after the jury had been excluded from the courtroom. It was stipulated that if the same questions were asked in the presence of the jury, the court would sustain an objection to each of said questions.

The following questions were asked in the presence of the jury, and objection thereto was sustained:

"Now, I will ask you if it is not a fact, Mrs. Amos, that you are frequently intoxicated in public saloons in the town of Tracy?"

"I will ask you, Mrs. Amos, if it is not a fact that you have solicited money from men in public bars in the town of Tracy?"

"Mrs. Amos, I will ask you if it is not a fact that you have come home to your own home at 5:00 or 6:00 o'clock in the morning in an intoxicated condition?"

The only case which would appear to bear out the contention of appellant that he had the right to pursue such cross-examination is that of *People* v. *Biescar*, 97 Cal. App. 205 [275 Pac. 851].) In that case the trial court refused to permit the defense to cross-examine the prosecuting witness in respect to a "party" which she attended about a week prior to the date of the alleged crime of rape by force and violence. The opinion states that "on direct examination she had given no testimony whatever concerning the party which occurred at appellant's home on March 17th and 18th. . . . Notwithstanding that fact, the witness was asked, on cross-examination, several questions concerning the occurrences on that occasion, for the purpose of showing the unchaste character of Pats (the complaining witness) with other men. Objections were made to each of these questions on the ground that they were not proper cross-examination, and the objections were sustained." The appellate court there held that the questions were proper, and that the ruling mentioned was reversible error. This is the first

instance in the history of California jurisprudence, which has been called to our attention, where such a cross-examination has been permitted in a case involving rape committed by force or violence—in fact it is the first instance where the prevailing rule respecting the right of cross-examination has not been followed. This rule is purely statutory, and is set forth in section 2048 of the Code of Civil Procedure as follows:

"The opposite party may cross-examine the witness as to any facts stated in his direct examination or connected therewith, and in so doing may put leading questions, but if he examine him as to other matters, such examination is to be subject to the same rules as a direct examination."

It is not contended here that the questions propounded arose out of, or were connected with, the direct examination. In a case of this character the chastity of the prosecuting witness is not an issue. If it were, the legislature, in defining the crime, would have so provided, and it would be incumbent upon the prosecution to prove that fact. Such, of course, is not the law. The protecting arm of the law is placed around the unchaste with just as much potency as the chaste, so far as the prosecution of this crime is concerned. Even if chastity were an issue, this has no bearing upon the question as to what is proper cross-examination. It is true that in England and several states of this country, the right of cross-examination is extended to include questions bearing upon any of the issues, but in this state a different limitation is clearly set forth in the section of the Code of Civil Procedure mentioned above. The only manner in which evidence of unchastity can be introduced is upon the part of the defense, under the rule that "where the defendant is charged with the crime of rape alleged to have been committed upon the person of a woman over the age of eighteen years, accomplished by force or violence, it is error to exclude evidence which tends to show prior unchaste acts of the prosecutrix either with the defendant or other men". (*People* v. *Pantages*, 212 Cal. 237–262 [297 Pac. 890], citing numerous authorities.) Such evidence "may be shown for the purpose of disproving the allegation that the act charged against the defendant was perpetrated through the exercise of force, and despite the unwillingness

of the prosecutrix''. (*People* v. *Degnen*, 70 Cal. App. 567 [234 Pac. 129, 138]. See, also, *People* v. *Shea*, 125 Cal. 151 [57 Pac. 885].) The questions propounded in the Biescar case are not set forth in that opinion, but we assume that they called for evidence which would support a finding that the prosecutrix had, prior to the alleged offense, committed an act of sexual intercourse. In any event, we are of the opinion that the questions here propounded were not proper cross-examination, and that the objections thereto were properly sustained. In arriving at this conclusion we are not unmindful of the general rule in cases of this character, which is to the effect that unusual liberality should be allowed in connection with the scope of the cross-examination of the prosecutrix. In *People* v. *Degnen*, above, such a rule was stated, with the qualification that the examination should be ''limited by the very broad lines of the direct examination''. It is obvious that there must be a reasonable limit to such an examination, and that the contention of the appellant here would far transcend such limit.

Such questions are also inadmissible for the reason that they would not bring out any facts proving, or tending to prove that the witness had engaged in prior acts of sexual intercourse. A very similar group of questions was held inadmissible by this court in the case of *People* v. *Burrows*, 27 Cal. App. 428, 429 [150 Pac. 382]. ▇ The cases which are the basis for the rule contended for by appellant arose seventy or more years ago. In one of those cases the defense was allowed to prove, in attacking the moral character of the prosecuting witness, that she chewed tobacco. In another case the alleged ''lewd act'' was drinking intoxicating liquor in a public place. These are typical of the acts which the courts, many years ago, held to be evidence of unchastity, and which laid the foundation for the rule in the Biescar case, now sought to be invoked by appellant. Suffice it to say, that we are permitted to take judicial notice of customs and the ordinary affairs of life. It must be conceded that habits and social customs have altered since the origin of the rule mentioned, so that, in many respects, its application, as set forth in the earlier cases, would be a grotesque anachronism.

■ Attention is called by appellant to five instances in which it is contended that the trial court erred in excluding testimony. None of these questions is set forth in appellant's brief; neither is the line and page in the transcript given, where the particular question was asked. The first two were propounded during the cross-examination of the prosecutrix. It is a familiar rule that in the matter of the extent of cross-examination, the trial judge is vested with wide discretionary powers. While it is true that in a case involving the charge of rape, a wider range than usual should be afforded the defendant in the matter of cross-examination, we are of the opinion that the trial court fully complied with the law in this respect, and that, in the rulings of which complaint is made, there was no abuse of discretion. The record before us would indicate the comparative time taken on the direct and cross examination of the prosecuting witness. The direct examination takes up *twenty-three* pages of the reporter's transcript, while the cross-examination is spread over *one hundred eight* pages. This would tend to refute the contention that the trial court unduly restricted defendant in such cross-examination.

■ The third question was addressed to alleged error committed in sustaining objections to questions asked of the wife of defendant, and relating to remarks made by the prosecuting witness to her while the parties were in a resort prior to the alleged offense. When the objection was sustained, no offer of proof was made. On the face of the record the question called for hearsay testimony, which was inadmissible.

The fourth and fifth rulings which are questioned were proper for the same reason. The questions were addressed to the wife of defendant, and called for conversation between her and the prosecuting witness in one instance, and with police officers in another.

Finally, as to the last three questions, we are unable to say that the ruling in these matters would be prejudicial, for the reason that no specific offer of proof was made in respect to any of them.

■ It is contended that the evidence is insufficient on the question as to the resistance made by the prosecutrix. This question was one for the jury to decide. The record shows

that there was ample evidence to justify an implied finding that the attack was resisted with all reasonable means. The law provides no specific formula for such resistance, and the fact that the prosecutrix did not adopt certain tactics which appear appropriate to defendant, is of no consequence.

In spite of the somewhat heated attack made upon the attitude of the trial judge in the brief of appellant, we are of the opinion that under the stress and strain of the proceedings, he acted fairly and impartially throughout; that there is ample evidence to support the verdict; and that the record is free of error.

The order denying a motion for new trial and the judgment are affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 24, 1939.