[Crim. No. 750. Fourth Dist. Aug. 15, 1951.]

THE PEOPLE, Respondent, v. CLEVELAND L. JACKSON, Appellant.

Thomas Whelan, Hugh E. Macbeth, Sr., and Curtis C. Taylor for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

MUSSELL, J.—Defendant, who was a physician licensed to practice medicine in the State of California, was accused of the crime of sale of narcotics, in that on or about the 6th day of July, 1950, he did wilfully, unlawfully and feloniously sell a certain narcotic, to wit, morphine. The information con-

tained a second count in which it was alleged that the defendant was guilty of furnishing narcotic by a physician to one not under treatment for pathology, in that on or about the 6th day of July, 1950, he did wilfully, unlawfully and feloniously and not in the regular practice of his profession as a medical practitioner prescribe, administer and furnish a narcotic, to wit, morphine, to or for a person who was not at said time under his treatment for a pathology or condition other than narcotic addiction.

A jury returned a verdict of guilty as charged in the first count of the information, recommending leniency, and was unable to agree upon a verdict as to the second count. Following the denial of a motion for a new trial, the defendant was given a sentence of imprisonment for a period of six months and this appeal followed.

The first ground of appeal is that the verdict is contrary to the law. The contention is that the provisions of the Health and Safety Code of the State of California, as of July, 1950, did not contemplate the prosecution of a duly and regularly licensed physician and surgeon under the facts and circumstances presented in the case at bar.

Section 11500 of the Health and Safety Code provides as follows:

"Possession, etc., of narcotic forbidden. Except as otherwise provided in this division, no person shall possess, transport, sell, furnish, administer or give away, or offer to transport, sell, furnish, administer, or give away, or attempt to transport a narcotic except upon the written prescription of a physician, dentist, chiropodist, or veterinarian licensed to practice in this State." This statute provides that "no person" shall sell a narcotic except upon a written prescription. Physicians are not excluded from the definition of the word "person" and it is apparent that all persons, including physicians, are thereby forbidden under liability of criminal prosecution to furnish or sell any narcotic except as otherwise provided in the statute.

Section 11330 of the Health and Safety Code, provides that a physician may prescribe for, furnish to, or administer narcotics to his patient when the patient is suffering from a disease, ailment, injury, or infirmities attendant upon old age, other than narcotic addiction. The physician shall prescribe, furnish or administer narcotics only when in good faith he believes the disease, ailment, injury or infirmity, requires such treatment.

■ Defendant argues that when a physician attends a patient it is presumed that whatever treatment he gives is given in good faith; that when a physician administers or dispenses narcotics in good faith in the treatment of a patient there can be no unlawful intention and no crime committed. Evidence was introduced by both the prosecution and defense that the defendant gave the complaining witness a hypodermic injection of morphine. Whether such act was performed in good faith was a question for the jury to determine from the evidence, including any presumption available to the defendant.

The appeal herein is from a judgment rendered on the first count of the information, which charges an unlawful sale of morphine on a specific date. The defendant denied this allegation. His testimony was that he did not furnish, prescribe, administer or sell the two tablets of morphine sold to the complaining witness and found in her possession after such sale.

■ The applicable provisions of the Health and Safety Code, section 11000 et seq., do not exempt a physician from prosecution for unlawful sale of narcotics and where the evidence fairly sustains the verdict of a jury, the conviction of one who is a physician must be upheld. (*People* v. *Kinsley,* 118 Cal.App. 593, 601 [5 P.2d 938].)

The evidence, briefly summarized, is as follows: The prosecuting witness, Norine Marie Monroe, first met the defendant during the latter part of January or the first part of February, 1950, through a colored porter, one George Brooks. She testified that at that time she bought some small tablets from the defendant at $5.00 each; that she was not then under treatment for any condition; that she had a sty on her eye and the defendant lanced it; that she saw the defendant on July 3, 1950, in a liquor store in San Diego, at which time and place she purchased seven pills or tablets at $5.00 a tablet; that she saw the defendant many times during January of 1950 through July 3d and that on each occasion she purchased certain pills from him at $5.00 a pill; that on the 4th of July her brother-in-law in San Diego found narcotics in her handbag which she had purchased from the defendant; that he called the police and she was placed under arrest; that after her arrest, she had a conversation with certain police officers concerning her purchase of narcotics and on July 6th she, in company with two officers, drove within approximately two blocks of the defendant's office; that the officers gave her $20

in the form of $5.00 bills with which to make a purchase from the defendant; that she entered the defendant's office and purchased four tablets from him, two of which were given to her in a hypodermic and the other two to take out; that she paid $5.00 for each of these tablets; that the defendant obtained the tablets from a brown bottle in his jacket pocket; that she asked the defendant to give her a shot as she was ill and could not make it back to her hotel without some narcotics; that she told him she was having withdrawal symptoms very badly; that he put the four tablets on a Kleenex in front of her, took two of them into the other room and came back with a prepared hypodermic and gave her an injection in the hip; that during the course of her various visits to defendant she was never treated for any condition other than a sty on the eye and when she was asked if she had ever requested Dr. Jackson to treat her for a particular condition, she replied "The only treatment I asked for was narcotics."

A San Diego police matron testified that on July 6th she examined the prosecuting witness in the city jail about 11:15 a.m.; that she gave her a "skin test," removed her clothing, made a thorough examination of it and of the complaining witness and that she found nothing other than the items of clothing.

W. L. Wilson, a police officer, testified that at about 11 o'clock a.m. on July 6th, immediately after the matron had searched the complaining witness, he and Officer Keyes gave her four $5.00 bills; that after taking the numbers from the bills, they drove with the witness to within approximately two blocks of the defendant's office, where they let her out and instructed her to walk to and enter the defendant's office; that they followed and watched her enter; that after about 30 minutes, she came out the front door and handed Officer Wilson Kleenex which contained two tablets. (These tablets were admitted in evidence as an exhibit for the People and were shown to contain morphine.)

The complaining witness was then placed under arrest. Officers Wilson and Keyes then entered the building and searched the defendant. In the lefthand pocket of his trousers they found a brown bottle containing four tablets which contained morphine. The defendant then reached into his pocket and said "Is this what you are looking for?" and brought out four folded $5.00 bills; that the numbers on the bills taken from the defendant were identical with those on the bills theretofore furnished the complaining witness. Dr. Jackson

stated he had received the $5.00 bills from the girl who was in the office a short while previously; that he did not know the girl's name; that he had given her one fourth grain of morphine and some adrenalin by hypodermic. He was asked if he had entered this in his date book and he replied that he had not; that he did not know why; that he had given the girl narcotics because she stated she had asthma; that he had opened up the front of her clothes and gone over her chest with a stethescope. Upon being asked what kind of clothes she wore, he replied that he did not know.

The officers further testified that they searched the record books in defendant's office and that the name Norine Monroe was not found, although the search made covered a period from January 1, 1950, to and including the 6th day of July, 1950; that order forms and prescription blanks issued by the state to physicians were examined and the name Norine Monroe was not found therein; that from an examination of the doctor's record books it appeared that there were approximately 200 morphine pills unaccounted for.

The defendant testified that he first saw the complaining witness in the early part of June, 1950; that he was introduced to her by George Brooks; that she gave the name of Clarice Goodall; that she was having difficulty with her respiratory organs and was wheezing when she breathed; that he gave her adrenalin, morphine and atropine to ease her pain and enable her to sleep. He denied that he met or saw her in his liquor store on July 3, 1950. He admitted that he had examined Miss Monroe in his office on July 6th, 1950, and stated that while she was in the room, he obtained from her the information that she was staying at the Pickwick Hotel at that time and her name was Clarice Goodall; that he took a morphine tablet from a bottle, went into the next room to dissolve the tablet in sterile water, added 1 c.c. of adrenalin into the same syringe, went back in the office and gave Miss Monroe an injection in her left arm. He denied giving her any pills containing morphine to take away from his office and stated that the brown bottle containing the tablets was left on the desk when she was alone in the office while he was in the other room preparing the hypodermic; that after giving her the injection, he left the room and upon returning, found that the office was vacant; that Miss Monroe had gone; that he then noticed some money lying on his desk which he put into his pocket and continued with his work; that he did not count the money at that time; that he had never lanced a sty for Miss Monroe; that he

had never knowingly administered a narcotic to an addict; that when the officers arrived they searched him, took the money from his pocket and also took the bottle from which he had secured the morphine used in giving Miss Monroe the injection.

Witnesses were produced by the defense in an attempt to show various discrepancies in the testimony of the complaining witness in that the liquor store referred to was not open on July 3, 1950 and that the doctor had not lanced her eye. In addition, several witnesses were produced who testified as to the reputation of the defendant as a law abiding citizen and an ethical practitioner.

■ Defendant argues that the story of Norine Monroe is incredible and should not be believed, and in this connection it was shown that the charge placed against her by the district attorney upon her arrest on July 4th was dismissed after she testified in the instant action. While there is a sharp conflict in the testimony relating to the activities of the defendant and of the complaining witness in many respects, the evidence is quite clear that the complaining witness visited the doctor's office on July 6th and returned from it with two morphine tablets wrapped in Kleenex, which were delivered to the police officers; that the "marked" money furnished to the complaining witness was taken from the defendant immediately thereafter. These circumstances, together with the testimony of the complaining witness, furnished substantial evidence supporting the charge of an unlawful sale of narcotics. The defendant, when questioned by the officers, admitted administering narcotics to the complaining witness but could not give her name, despite the fact that he testified that he made out a card in the name of Clarice Goodall, which card contained the notation that the patient complained of asthma; that an examination showed asthmatic wheezing throughout the chest wall, and that morphine was administered to her. He could not remember the manner in which the girl to whom he administered the narcotics was dressed, although it had been only a few minutes since she had left his office. He kept his supply of morphine pills in a brown bottle which he had in his pocket at the time he was searched. He admitted that he did not count the money; that it was merely lying on his table when he picked it up and placed it in his pocket. These circumstances, together with the testimony concerning 200 morphine tablets unaccounted for in the doctor's records, furnish ample evidence to support the verdict and judgment.

■ The discrepancies in the testimony of the witnesses were matters solely for the observation and consideration of the jury and for the consideration of the trial court on the motion for a new trial. This court may not disturb such findings and the action of the trial court, where, as here, it cannot be said as a matter of law that there is no evidence to support the conviction. (*People* v. *Farrington,* 213 Cal. 459, 463 [2 P.2d 814] ; *People* v. *Ohman,* 67 Cal.App.2d 467, 475, 476 [154 P.2d 463] ; *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) As was said in *People* v. *Wissenfeld,* 36 Cal.2d 758, 765 [227 P.2d 833] :

" 'No rule of criminal law and procedure is better established in this state' than that where 'there is substantial evidence tending to support the verdict of the jury . . . this court cannot, as a matter of law, substitute its judgment on the facts for that of the jury.' "

■ Appellant next argues that the court unduly restricted the right of the defendant to cross-examine the complaining witness. He states that the court would not permit the questions as to whether the witness was married or single, whether she was registered at a certain hotel, whether she was alone when she came to San Diego or was living with someone at the San Diego Hotel; that defendant was not permitted to show that the complaining witness had obtained narcotics from persons other than the defendant prior to June 6th. These were immaterial matters and in view of the rule that a trial court may confine an examination within reasonable limits and may curtail the examination to matters which are relevant, no prejudicial error is shown to have resulted. (*People* v. *Serpa,* 67 Cal.App.2d 327, 332, 333 [154 P.2d 6] ; *People* v. *Mangum,* 31 Cal.App.2d 374, 379-382 [88 P.2d 207].) Appellant cites *People* v. *Flores,* 15 Cal.App.2d 385, 401, 405 [59 P.2d 517] and *People* v. *Higgins,* 18 Cal.App.2d 595, 599 [64 P.2d 454], as authority for his contention that the cross-examination was unduly restricted. In each of these cases the prosecution depended largely upon the credibility of a single witness and in the Flores case the court remarked that the testimony was such as to challenge one's credulity. In the Higgins case the evidence was such that the inherent incredibility of the testimony of the prosecuting witness presented a debatable question. In the instant case, the testimony of the prosecuting witness is corroborated by the testimony of the police officers and to a large extent by the testimony of the defendant himself. Under such circumstances, we are unable

to say that the trial court abused its discretion in curtailing the cross-examination.

Appellant attempts to claim prejudice from the denial of an offer to prove that the prosecuting witness had made certain statements during the preliminary examination. However, counsel for the defendant made no effort to lay the necessary foundation for the introduction of such statements for the purpose of impeachment. (Code Civ. Proc., § 2052.)

Appellant next complains of the trial court's refusal to call the witness George Brooks. We find no abuse of discretion in this refusal. The witness was called and testified as a witness for the defendant. Whether he was called by the People, the defendant or the court is immaterial.

Appellant next argues that the prosecutor was guilty of prejudicial misconduct in that in his argument to the jury he replied to the argument of counsel for the defendant with the observation that first offenders often get probation. This was with reference to the charge of possession of narcotics by the prosecuting witness. The deputy district attorney was replying to an argument advanced by counsel for the defendant. Under such circumstances no prejudicial misconduct appears. (*People* v. *Gomez*, 209 Cal. 296, 300 [286 P. 998].) Moreover, the trial court admonished the jury to disregard the remarks and that the punishment to be imposed upon the witness was no concern of the jury and neither was the punishment that might be imposed upon the defendant. The record indicates that the statement of the deputy district attorney was invited and there was, therefore, no prejudicial misconduct. (*People* v. *Rinesmith,* 40 Cal.App.2d 786, 792 [105 P.2d 1021]; *People* v. *Neal,* 91 Cal.App.2d 362, 364 [204 P.2d 895].)

Appellant next contends that the court misdirected the jury in matters of law and erred in its failure to give certain instructions requested by the defendant. In this connection he first attempts to predicate error in the giving of an instruction in the following language:

"With reference to the first count of the information you are instructed that it is unlawful for any person to sell, furnish, administer, or give away a narcotic except upon the written prescription of a physician, dentist, chiropodist or veterinarian licensed to practice in this State."

His contention is that the instruction should have contained the words "except as otherwise provided in this division" and that the jury was told in effect that it was a violation of

law for anyone, including the defendant, at any time, to sell, furnish, administer or give away a narcotic without a prescription. An examination of the instructions as a whole discloses that the jury was fully and fairly advised as to the proof necessary before the defendant could be convicted and was instructed as follows:

"You are instructed that in the regular practice of his profession a licensed physician may prescribe for, administer to or furnish to any person who is under his treatment for a 'pathology or condition, except narcotic addiction, a narcotic where such person so under his treatment is actually suffering from or appears to be suffering from a physical condition which would suggest that narcotics might be used in accordance with good medical practice.' "

"You are instructed that in a prosecution of a physician for unlawfully furnishing or administering narcotics, the question of whether he acted in the regular and legitimate practice of his profession is one of good faith, to be determined from all the facts and circumstances in the case and his good faith in such a case is a question of fact for the jury."

The exceptions to the provisions of section 11500 relied upon by the defendant in the instant case were properly presented to the jury in the instructions above quoted.

Complaint is made of an instruction containing the statement that the burden was upon the defendant to show that there was a written prescription in existence to justify or excuse his possession of narcotics or his actions and that in the absence of proof of the existence of such prescription, the jury must find that no such prescription was in existence. The defendant admitted that a prescription was not furnished and there is no implication from the instruction that mere possession of narcotics by the defendant without a written prescription constituted guilt of the offense charged, to wit, the sale of a narcotic.

Appellant complains of the refusal of the trial court to give an instruction relating to the sale of narcotics without prescription by jobbers, wholesalers, manufacturers and pharmacists. There was no issue raised as to such sale and the offered instructions relative thereto were properly refused.

Appellant contends that certain instructions offered by him relating to good faith treatment by a doctor should have been given by the trial court. However, an examination of the record shows that the jury was sufficiently instructed on this subject.

 Appellant claims an instruction given by the court relating to accusatory statements was improper. The argument is that there was nothing in the evidence indicating an accusatory statement or admission. However, a conversation which took place between the officers and the defendant while he was being searched was sufficient to justify the instruction given.

 Appellant next urges that the trial court was guilty of error in refusing to give an instruction on entrapment. Where, as here, the officers used no more persuasion than was necessary to an ordinary sale and the defendant willingly made the sale, there is no entrapment. (*People* v. *Lindsey*, 91 Cal.App.2d 914, 917 [205 P.2d 1114].) There was no error in refusing to give an instruction on the subject under the circumstances disclosed by the record.

 Finally, the defendant claims that the jury was guilty of misconduct and that the verdict was decided by lot. This argument is based on the theory that the jury disregarded the instruction of the court relative to a discussion or consideration by them of the penalty or punishment which might be inflicted on the defendant. Several letters were obtained from members of the jury which indicated that some jurors were led to believe that the court had the power to grant the defendant probation, and that they would not have voted for a verdict of guilty except for a certain instruction. The verdict of the jury cannot be impeached in this manner and no grounds were presented which would permit the impeachment of the verdict. (*People* v. *Reid*, 195 Cal. 249, 261 [232 P. 457, 36 A.L.R. 1435] ; *People* v. *Smith*. 206 Cal. 235, 239 [273 P. 789] ; *People* v. *Kromphold*, 172 Cal. 512. 524 [157 P. 599] ; Code Civ. Proc., § 657(2) ; Pen. Code, § 1181(4).)

We have examined the entire record in this matter and conclude that the evidence sustains the verdict of the jury and that there were no prejudicial errors in the rulings of the court.

Judgment and order affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 13, 1951.