[Civ. No. 39702. Second Dist., Div. Two. Mar. 17, 1972.]

CHARLES E. BAKER, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Albert C. S. Ramsey, Edward B. George, Jr., and Allen, Wilson & George for Petitioner.

No appearance for Respondent.

Joseph P. Busch, District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**ROTH, P. J.**—Petitioner Charles E. Baker seeks a writ prohibiting the respondent court from proceeding with a trial on seven counts, each charging violation of Health and Safety Code section 11912.

The facts underlying the charges are fairly summarized in the People's brief:

"Each count involves the same basic factual situation: defendant, a doctor (whether it was adequately shown that he was licensed being in dispute), wrote a prescription without any showing of medical need therefor, simply at the request of the 'patient.' In fact, these 'patients' were undercover operatives. Defendant charged and collected $10 for each prescription. The undercover operators did not go further and have the prescriptions filled by a pharmacist. Thus, there was never any physical obtaining of the dangerous or narcotic drugs prescribed. Each prescribing of dangerous drugs was charged in the information as a count of violation of Health & Safety Code section 11912. These are the only counts in issue in the instant writ proceeding."

Section 11912 of the Health and Safety Code provides in relevant part: "Except as otherwise provided in Article 8 (commencing with Section 4210) of Chapter 9 of Division 2 of the Business and Professions Code, every person who transports, imports into this state, sells, manufactures, compounds, furnishes, administers, or gives away, or offers to transport, import into this state, sell, manufacture, compound, furnish, administer, or

give away, or attempts to import into this state or transport any restricted dangerous drug, except upon the prescription of a physician, dentist, podiatrist, or veterinarian licensed to practice in this state, shall be punished by imprisonment in the state prison for a period of five years to life. . . ."

■ The People seek to justify the prosecution under section 11912 by the argument that the act of prescribing is equivalent to selling or furnishing and that since the prescriptions issued by petitioner were not for "proper medical purposes," petitioner is not within the exception to section 11912. This position is basically unsound and rests on a series of misinterpretations of specific statutes, as well as a misreading of the relevant statutory scheme.

Division 10.5, added to the Health and Safety Code in 1965 and comprehensively amended in 1970, is a separate division thereof. So much ought to be apparent from the fact that it is not in division 10 (narcotics) nor of course in division 11 (explosives) but in one separately enacted as division 10.5 (restricted dangerous drugs). Indeed, the Legislature left no room for doubt on this point when, in the initial section of division 10.5, it declared that *"This division* shall be known as the 'Drug Abuse Control Act of 1970.' " (Italics added.) (§ 11900.)

Section 11903, found in division 10.5, defines "prescription" in subdivision (a) as an order given individually for the person for whom prescribed "directly from the prescribed *to the furnisher* or indirectly by means of an order signed by the prescriber, . . ." (Italics added.) "Furnish" is defined in subdivision (j) of this section by reference to section 4048.5 of the Business and Professions Code which in turn states that this term means ". . . to supply by any means, by sale or otherwise." In other words, there are three parties when a drug is prescribed: the patient, the pharmacist who supplies or "furnishes," and the doctor who prescribes. Appropriately enough, division 10.5 as well as companion statutes undertake to regulate the duties and responsibilities of those who "furnish," in other words the pharmacists, separately from those who "prescribe," the doctors, since the acts of each are qualitatively and obviously different.

The People's claim that the "prescription" section of division 10, to wit: section 11162.5, which by its terms is applicable to "this division," applies by virtue of that language to division 10.5 is, of course, in error, as we have shown above. "Prescription" is defined in division 10.5 by section 11903, subdivision (a), see *supra.* Moreover, section 11162.5 speaks of "narcotics," dealt with in division 10, and not restricted to dangerous drugs, the subject of division 10.5.

All drugs prescribed by doctors, whether narcotic or otherwise, could be classified as restricted dangerous drugs. It may be that the Legislature, with calculation, drew a distinction between dangerous drugs and narcotics which latter could certainly be embraced in the former to avoid penalizing the public or the doctor by circumscribing a doctor's judgment with penal sanctions if such judgment were exercised mistakenly or negligently but in good faith. The Legislature could have properly felt that proof of mistakes in judgment in prescribing drugs, even though made in good faith, and certainly an abuse of the doctor's right to prescribe, should be the subject of disciplinary action under the provisions of Business and Professions Code, rather than penal sanctions.

It should be noted, too, that the definition of "dangerous drugs" is somewhat open-ended (Health & Saf. Code, § 11901) thus providing a further reason for distinguishing between dangerous drugs and narcotics.

The People concede that no drugs were ever obtained by means of these prescriptions. This concession is irrelevant to the charge made against petitioner, namely *prescribing* a dangerous drug without a medical examination. That act is proscribed as unprofessional conduct in section 2399.5 of the Business and Professions Code.[1] We note that section 11912 of the Health and Safety Code is by its very terms subjected to sections 4210 et seq. of the Business and Professions Code and that it is thus apparent that conduct (or misconduct) specifically regulated by sections 4210 et seq. of the Business and Professions Code is not meant to be governed by the provisions of section 11912 of the Health and Safety Code. Section 2399.5 of the Business and Professions Code is specifically referenced to section 4211 of the same code, demonstrating that the Legislature had no intention of punishing the prescription of a dangerous drug without a medical examination (§ 2399.5) as a sale or even offer of sale (§ 11912, Health & Saf. Code) of a dangerous drug.

The People's reliance on *People* v. *Jack,* 233 Cal.App.2d 446 [43 Cal. Rptr. 566], to support the theory that petitioner can be brought within section 11912 of the Health and Safety Code since the act of prescribing is equivalent to an "offer" (§ 11912) to sell is utterly self-defeating. In *Jack,* the prosecution was under section 4237 of the Business and Professions Code (forging prescriptions) which is precisely the code to which the state should resort in this case.

The prosecution at bench under section 11912 of the Health and Safety Code is not tenable.

---

[1] "Prescribing dangerous drugs as defined in Section 4211, without either a prior examination of the patient or medical indication thereof, constitutes unprofessional conduct within the meaning of this chapter."

Let a peremptory writ issue prohibiting respondent court from taking further proceedings herein as to counts I, II, III, IV, V and VI and X of the information in superior court case No. A-011467.

Fleming, J., concurred.

**COMPTON, J.**—I dissent.

At a time when the entire nation is racked with the problem of drug abuse, especially among its younger people it is shocking to find that a medical doctor would so abuse the powers entrusted to him and contribute to the drug abuse problem by engaging in activity which is as reprehensible as that of an ordinary street peddler of illicit drugs.

A reasonable interpretation of the various statutes which make up the regulatory scheme dealing with narcotics and dangerous drugs does not lead to the conclusion reached by the majority concerning the intent of the Legislature. Against the backdrop of the Legislature's continuing efforts to curb the illicit traffic in narcotics and dangerous drugs, I cannot ascribe to that body any intent to carve out an exemption from the operation of the Penal statutes for doctors who use their power of prescription to engage in the illicit traffic.

In my opinion the majority errs in three significant ways.

(1) They fail to read into the term "prescription," as contained in section 11912 of the Health and Safety Code, any of the traditional requirements of a valid prescription;

(2) They find an intent on the part of the Legislature to exempt a doctor from the operation of section 11912 in the fact that Business and Professions Code section 2399.5, condemns as unprofessional conduct the very practice in which this defendant engaged; and

(3) They fail to give the proper deference to the powers of the magistrate who, on this evidence, made a factual determination that the "prescription" involved was not a valid one. It is inappropriate for us on a writ of prohibition to reweigh that evidence.

The term "prescription" is defined in Webster's Seventh New Collegiate Dictionary as "4 a: a written direction for a *therapeutic* or corrective agent; *specif*: one for the preparation and use of a medicine." The term "prescribe" is defined by Webster "to designate or order the use of as a *remedy*." "Therapeutic" is defined by Webster as "of or relating to the *treatment of disease or disorders*. . . ." "Medicine" is defined as "a sub-

stance or preparation used in *treating disease*." "Remedy" is defined as "a medicine or application that *relieves or cures a disease*." (Italics added.)

Thus it is quite apparent that the term "prescription" not only by Webster's definition but by commonly accepted usage connotes the action of a doctor in providing narcotics, drugs or other medicinal substances for the *treatment of an illness* or medical problem *based upon a medical diagnosis*.

When the Legislature as a part of its very restrictive regulatory scheme authorizes physicians to prescribe narcotics and dangerous drugs, that authorization presupposes that a medical doctor will issue the prescription only on the basis of medical judgment for a medical need.

Clearly the Legislature did not intend to simply create an exempt class of persons who could, with immunity, traffic in narcotics and dangerous drugs for the purpose of catering to the appetites of addicts or drug abusers.

The enactment of Business and Professions Code section 2399.5, contrary to the majority's conclusion, manifests a clear legislative intent that a prescription, to be valid, must be based on an examination of the patient and a medical indication of a need for the drug. That section can in no way be interpreted as an indication that the Legislature intended that administrative sanctions were the only penalty to be suffered by a doctor who improperly issues prescriptions. It is to be noted that Business and Professions Code section 2391.5 states that "The violation of any of the statutes of this State regulating narcotics and dangerous drugs, constitutes unprofessional conduct within the meaning of this chapter."

Following the majority's rationale, this latter statute would indicate an intention of the Legislature to exempt doctors from Penal sanctions for the violation of any statute dealing with narcotics or dangerous drugs. This is obviously not the case.

Section 11162.5 of the Health and Safety Code, enacted prior to the present section 11912, clearly spells out the concept that the term "prescription" as used throughout the code means a bona fide prescription for legitimate medical purposes. It is apparent that the Legislature, in its use of the term "prescription," had something more in mind than simply a writing on a piece of paper in a particular form.

The majority attaches great significance to the fact that section 11903, which is part of a newly added division 10.5, did not carry into the definition of "prescription" the language of section 11162.5 of the Health and Safety Code. A careful reading of section 11903, subdivision (a) indicates quite clearly that the legislative intent was simply to broaden the term

prescription to embrace oral as well as written prescriptions. In view of the manifest general legislative intent to increase its control over dangerous drugs that definition cannot possibly be interpreted as meaning that a prescription is valid when it is not for legitimate medical purposes.

Under the circumstances of this case it seems to be beyond question that if the doctor had sold the pills directly to the undercover operators he would have violated the statute. This would be true if that sale were effected in his office or on the streets. Here the doctor instead sold the undercover operators the keys to the pharmacist's medicine cabinet. In sum, the written document which the doctor provided to the undercover operators was not a prescription but a tool employed by him to make the pharmacist his innocent agent in the illicit traffic of dangerous drugs.

The next question to be answered is did the doctor sell or *furnish* dangerous drugs so as to come within the purview of section 11912?

Section 11903, subdivision (j) of the Health and Safety Code and section 4048.5 of the Business and Professions Code state that "furnish" means "to supply by any means, by sale or otherwise."

I pose two hypothetical questions. If the doctor had written a check drawn on his bank account and had given that check to the undercover operators, could it not be said that he furnished them with money? If he gave them the pink slip and keys to his automobile, could it not be said that he furnished them with an automobile? In my opinion, the conduct of the defendant in this case, based on the evidence now before us, was well within the provisions of section 11912.

It might well be that, on a trial of the matter, the defendant can offer evidence which would lend validity to the prescription which he purported to write and the jury could be properly instructed as to what constitutes a valid prescription. I feel, however, that it is wrong for this court at this stage of the proceedings to say that as a *matter of law* a doctor can by the simple device of setting his pen to an official prescription blank, traffic in illicit and dangerous drugs with immunity.

I would deny the writ.

A petition for a rehearing was denied April 13, 1972. Compton, J., was of the opinion that the petition should be granted. The petition of the real party in interest for a hearing by the Supreme Court was denied May 10, 1972.