[No. G007479. Fourth Dist., Div. Three. Mar. 26, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
TAD EMERY LONERGAN, Defendant and Appellant.

**COUNSEL**

Richard W. Bonner, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney

General, Rudolph Corona, Jr., and Craig E. Fisher, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

MOORE, J.—A jury convicted appellant, a physician, of three counts of unlawfully issuing prescriptions for controlled substances without a legitimate medical purpose, in violation of Health and Safety Code section 11153, and two counts of prescribing controlled substances to a person not under treatment for a pathology other than addiction, in violation of Health and Safety Code section 11154.[1] On appeal, appellant contends the jury instructions were inadequate and there was insufficient evidence to support the conviction.

## FACTS

### PROSECUTION'S CASE

On May 24, 1984, Michael Withem presented prescriptions written by appellant for 100 tablets of Tylenol number four (Tylenol combined with 60 milligrams of Codeine) and 50 tablets of Doriden to a pharmacist at La Veta Pharmacy. The pharmacist recognized Withem as someone who had filled similar prescriptions in the past. Since Withem was young and apparently able-bodied, and because the combination of drugs requested is known on the street as "fours and doors" and is highly abused, the pharmacist reported appellant's prescriptions to an agent from the State Bureau of Narcotic Enforcement (BNE).

Withem had been seeing appellant since 1983 for pain following back surgery in 1982. In late 1983, Withem's mother told appellant that her son was taking eight Codeine and four Doriden twice a day and he was sharing his pills with friends. Appellant knew that Withem had been arrested for being drunk in public in 1984. He prepared a letter for Withem to take to court stating, in part, Withem was taking Tylenol with Codeine, Valium as a muscle relaxant, and Dalmane for sleep. In order to get more pills Withem told appellant he had prescriptions or pills stolen on several occasions. Most of those reports were lies. Appellant continued to write prescriptions for Withem even after Withem told him that he was caught burglarizing a pharmacy and had been to drug programs twice. In fact sometimes Withem went to appellant's office under the influence of drugs.

---

[1] All references to section 11153 or section 11154 are to the Health and Safety Code.

Following the report by the La Veta pharmacist, the BNE arranged monitored visits to appellant by two undercover operators. On June 8, 1984, Rachelle McCullough went to appellant's office. She had her weight noted and her blood pressure taken. No other physical examination was given. McCullough told appellant she was taking nine to ten Tylenol with Codeine a month and she liked having them around the house in case someone needed them for pain. Appellant wrote a prescription for 30 Tylenol with Codeine number four and handed it to McCullough. McCullough returned to appellant's office on June 21, 1984. She told appellant nothing was wrong but requested a refill of the Tylenol with Codeine. Appellant refused her request after eliciting information from her that she was taking three of the pills per day. He also refused her request for Doriden and suggested that she buy Doriden on the street.

Mary Cleveland went to see appellant on July 25, 1984. She had no physical examination other than a weigh-in and the taking of her blood pressure. When she saw appellant she told him that she had no pain but asked for a prescription for Tylenol with Codeine so that she could mellow out in the afternoon. She asked for a refill of prescriptions she had been receiving in Minnesota. Appellant suggested that Cleveland might be a Drug Enforcement Agency agent. He then gestured at the window and called out "I know she's an agent, I know you're out there, I'll write if you want me to." Appellant then wrote a prescription for 50 Tylenol with Codeine number four and gave it to Cleveland.

Cleveland returned to appellant's office on August 15, 1984, and requested a refill of her prescription. During the course of the consultation, appellant lectured Cleveland on drug abuse, but then suggested she get her drugs "on the street." He also calculated that if she had taken two pills per day from the last prescription there should be 20 left. Cleveland responded that she didn't want to run out of the pills. Appellant wrote a prescription for her. Cleveland returned to appellant on September 11, 1984, but appellant refused her request for more drugs.

Codeine is a narcotic. It is habituating. Doriden is a sleeping pill. Tylenol number four and Doriden are central nervous system depressants. They are sedating and cause mental dullness. Tylenol number four has twice the amount of Codeine as Tylenol number three and physicians prescribe Tylenol number three 20 times more often than Tylenol number four.

Tylenol with Codeine, Doriden and Valium are schedule III drugs. They are more addictive than schedule IV drugs such as Dalmane and diet pills but less habituating than schedule II drugs which include Methadone, Barbiturates, Dilaudid and Percodan.

Taking Codeine and Doriden together increases the effect of each drug. On the street the two drugs are called "fours and doors" or "loads" because people get loaded on them and they have a heroin-like effect. The combination causes euphoria, mellowness, unnatural calm and drowsiness.

According to the People's expert physician, appellant's medical records for the undercover operators did not support the issuance of prescriptions for Tylenol number four. In Withem's case, the expert believed that Tylenol with Codeine was appropriately prescribed for pain. However, it was only indicated for the first few weeks of treatment, and he questioned the propriety of giving Tylenol number four. In addition, continuous prescriptions for Doriden were unusual, inappropriate and contraindicated by the absence of any record of insomnia. Withem's drug abuse was apparent from appellant's file. There was no legitimate medical purpose for the drugs to be prescribed for as long as they were.

## DEFENSE CASE

Appellant testified as to his belief that schedule III drugs should be used routinely for pain management. He noted that he uses modalities other than pharmaceuticals in his practice including physical therapy and electrical stimulation.

Appellant was treating Michael Withem with Tylenol with Codeine and Doriden because Withem was barely able to move without the drugs and he told appellant that the combination of the two drugs helped him. According to appellant the alternatives to giving pharmaceuticals to Withem, including surgery, were unacceptable to Withem.

Appellant gave McCullough a prescription for 30 Tylenol with Codeine to tide her over until her medical records were secured from out of state. Since he doubted the legitimacy of her request, and he could not confirm her statements about getting the drugs from another doctor, he turned her down when she returned to his office the second time.

Appellant gave Cleveland prescriptions for 30 tablets and 50 tablets of Tylenol with Codeine number four on her respective visits because she complained of severe headaches and said she used one or two a day for pain. Each time appellant wrote a prescription for Cleveland he cautioned her about drug abuse. He refused her third request for Tylenol with Codeine because he could not locate her doctor in Minnesota. Appellant's notes in Cleveland's chart include a query whether the patient was a Board of Medical Quality Assurance or Drug Enforcement Agency operative and a note that she takes a lot of pills to get high.

According to appellant's expert witness, physicians disagree on the treatment of pain. Some responsibie doctors treat chronic lower back pain with schedule III analgesics. Tylenol with Codeine is indicated for the treatment of mild to moderate pain. Doriden is a sedative and when taken with Tylenol with Codeine its effect lasts longer than it would without the Codeine. The defense expert testified that it is reasonable to prescribe both Doriden and Codeine to manage back pain even if the patient has a drug abuse problem. It is also reasonable to prescribe Tylenol with Codeine to a person from out of state before the arrival of medical records when the patient says that the substance is needed for pain.

## I.

### The Jury Was Properly Instructed on Health and Safety Code Section 11153 and the Defense of Good Faith

The jury convicted appellant of violating section 11153 in count I in his treatment of Withem between May 11, 1983 and August 1986, in count III relating to the office visit by McCullough on June 8, 1984, and in count VII relating to the office visit by Cleveland on August 15, 1984. Appellant was acquitted of violating section 11153 in count V relating to the visit by Cleveland on July 25, 1984.

Appellant contends that the jury was insufficiently instructed on the defense of good faith. He claims that the court's refusal of his proposed instruction on the subject left the inference that negligent conduct was sufficient for a conviction for violating section 11153. We do not agree.

Section 11153 provides in relevant part: "A prescription for a controlled substance shall only be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his or her professional practice. . . . [T]he following are not legal prescriptions: (1) an order purporting to be a prescription which is issued not in the usual course of professional treatment or in legitimate and authorized research; or (2) an order for an addict or habitual user of controlled substances, which is issued not in the course of professional treatment or as part of an authorized methadone maintenance program, for the purpose of providing the user with controlled substances, sufficient to keep him or her comfortable by maintaining customary use."

Health and Safety Code section 11210 provides in relevant part: "A physician, . . . may prescribe for, furnish to, or administer controlled substances to his patient when the patient is suffering from a disease, ailment, injury, . . . other than addiction to a controlled substance.

"The physician, . . . shall prescribe, furnish, or administer controlled substances only when in good faith he believes the disease, ailment, injury, . . . requires such treatment.

"The physician, . . . shall prescribe, furnish, or administer controlled substances only in such quantity and for such length of time as are reasonably necessary."

█ Good faith is "that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation." (*People* v. *Nunn* (1956) 46 Cal.2d 460, 468 [296 P.2d 813], followed in *People* v. *Bowman* (1958) 156 Cal.App.2d 784, 795 [320 P.2d 70].) It is " ' "the opposite of fraud and bad faith." ' " (*People* v. *Nunn, supra*, 46 Cal.2d at p. 468.)

█ Health and Safety Code section 11210 exempts a physician acting in good faith from criminal liability under the provisions of sections 11153. It is a matter of defense. (*People* v. *Kinsley* (1931) 118 Cal.App. 593, 598 [5 P.2d 938].)

If a defendant convinces the jury that he acted in good faith, he has met his burden of proof which is to raise a reasonable doubt of his guilt of violating sections 11153 and 11154. █ "[W]hen there is placed upon an accused the burden of interjecting a factual contention which, if established would tend to overcome or negate proof of any element of the crime charged as otherwise established by the People, the accused need only raise a reasonable doubt as to the existence or nonexistence of the fact in issue [Citations.]" (*People* v. *Tewksbury* (1976) 15 Cal.3d 953, 963 [127 Cal.Rptr. 135, 544 P.2d 1335], quoted with approval in *People* v. *Figueroa* (1986) 41 Cal.3d 714, 721 [224 Cal.Rptr. 719, 715 P.2d 680].)

█ Here, the trial court instructed the jury completely on the provisions of section 11153 and the defense of good faith.[2] The trial court refused

[2] The court fashioned the following instructions: "Defendant is charged in Counts I, III, V and VII of the information with the commission of the crime of violation of Section 11153 of the Health and Safety Code. Pursuant to Section 11153 of the Health and Safety Code, any person who knowingly issues a prescription for other than a legitimate medical purpose in the usual course of his professional practice is guilty of a felony. A physician may prescribe controlled substances to his patient when the patient is suffering from a disease, pathology, ailment, or injury other than addiction to a controlled substance which he in good faith believes requires treatment by a controlled substance. That is a legitimate medical purpose and justifies a prescription in such quantity and for such length of time as is reasonably necessary.

"It is immaterial whether the physician is correct in his diagnosis, improvident in his administration of controlled substance, or varies from the practice of other physicians unless he varies so much as to be unreasonable in quantity or length of time, or to convince you, the jury, that he did not act in good faith. The law with respect to Health and Safety Code [*sic*]

to give appellant's instruction on good faith noting that the proposed instruction was covered in the court's definition of the crime. Appellant's instruction reads as follows: "The fact that a Physician might have made a mistaken diagnosis or improvidently administered narcotics or acted in a fashion different from that of other practitioners is immaterial if the Physician acted in good faith. When a Physician acts in good faith he does not act with criminal intent.

"In order to find the Defendant guilty of any of the alleged crimes you must be convinced beyond a reasonable doubt that the Defendant lacked good faith at the time of the alleged crime.

"If as to any of the alleged crimes you are not convinced beyond a reasonable doubt that the Defendant lacked good faith, then you must find the Defendant not guilty."

In its charge to the jury, the court said it did not matter whether the doctor was right in his diagnosis, improvident in his prescription writing, or if his practice differed from that of other physicians. Accordingly, appellant's definition of good faith was adequately covered. The extension of good faith as a state of mind reflecting the absence of criminal intent was equally clear from the instructions as a whole since they included CALJIC No. 3.30 (4th ed. 1979) on the requisite concurrence of general criminal intent with the act which the court modified to incorporate section 11153.

Appellant contends that when the court informed the jury that section 11153 did not require the doctor to be right but to act in good faith in issuing the prescription and issue it in reasonable amounts for a reasonable time, he made negligent conduct criminal. Not so.

██ In determining if the trial court erred in giving or not giving jury instructions, the reviewing court must consider the instructions as a whole

---

11153 does not require him to be right. It requires him to act in good faith in issuing the prescription and to issue it in reasonable amounts and for reasonable lengths of time.

"In order to convict the Defendant of any of the crimes charged against him, you must be convinced beyond a reasonable doubt that he has failed to comply with this standard.

"You are further instructed that among the ways a doctor can violate this standard is the issuance of:

"(1) an order purporting to be a prescription which is issued not in the usual course of professional treatment; or

"(2) an order for an addict or habitual user of controlled substances which is issued not in the course of professional treatment or as part of an authorized methadone maintenance program, for the purpose of providing the user with controlled substances, sufficient to keep him or her comfortable by maintaining customary use.

"Included in that instruction was the term 'good faith.'

"Good faith means honesty of purpose, freedom of intention to defraud, and faithfulness to one's duty or obligation. It is the opposite of fraud and bad faith." (Italics deleted.)

and must assume that the jurors are intelligent beings capable of understanding and correlating all the instructions which are given to them. (*People* v. *Billings* (1981) 124 Cal.App.3d 422, 427-428 [177 Cal.Rptr. 392], disapproved on other grounds in *People* v. *Karis* (1988) 46 Cal.3d 612, 642, fn. 22 [250 Cal.Rptr. 659, 758 P.2d 1189]; *People* v. *Martin* (1983) 150 Cal.App.3d 148, 158 [197 Cal.Rptr. 655], judgment vacated *sub nom. In re Martin* (1987) 44 Cal.3d 1 [241 Cal.Rptr. 263, 744 P.2d 374].) The correctness of the jury instructions is to be determined from the entire charge of the court and not from parts of an instruction or from a particular instruction. (*People* v. *Burgener* (1986) 41 Cal.3d 505, 538 [224 Cal.Rptr. 112, 714 P.2d 1251].)

 The court's instructions, read as a whole, clearly informed the jury that a doctor may lawfully prescribe controlled substances for a pathology even if his diagnosis is wrong, his prescription writing is negligent or his manner of practice differs from that of other doctors. The instructions did not tell the jury that an unreasonable variance from the practice of other doctors was enough for a felony conviction. Rather, they informed the jurors that they must be convinced beyond a reasonable doubt that appellant failed to comply with a good faith standard when he issued the prescriptions on which the charges were based. Good faith was thoroughly defined. In fact the jury's verdict of acquittal as to the prescription issued to operator Cleveland on her visit to appellant on July 25, 1984, reflects a determination that on that occasion appellant indeed acted in good faith.

Accordingly, appellant's conviction for violations of Health and Safety Code section 11153 in counts I, III and VII are affirmed.

## II.

### THE JURY WAS NOT ADEQUATELY INSTRUCTED ON THE VIOLATIONS OF HEALTH AND SAFETY CODE SECTION 11154, GOOD FAITH BEING A DEFENSE.

 Appellant was convicted of violating section 11154 in count IV relating to the visit by McCullough on June 8, 1984, and in count VIII relating to the visit by Cleveland on August 15, 1984. The jury acquitted appellant of violating section 11154 in count II relating to the treatment of Withem between May 11, 1983, and August 1986 and in count VI relating to the visit of Cleveland on July 25, 1984.

Appellant correctly points out that the court's instruction on section 11154 failed to instruct the jury on the good faith defense as it pertained to

the counts charging violations of section 11154. ■■■ Respondent avers that the good faith defense does not apply to section 11154.

Section 11154, subdivision (a) provides in relevant part: "Except in the regular practice of his or her profession, no person shall knowingly pre-scribe, administer, dispense, or furnish a controlled substance to or for any person . . . not under his or her treatment for a pathology or condition other than addiction to a controlled substance . . . ."

The trial court instructed the jury on section 11154 as follows: "Defend-ant is charged in counts II, IV, VI and VIII of the information with the commission of the crime of violation of Health and Safety Code Section 11154. Pursuant to section 11154 of the Health and Safety Code, every person who prescribes a controlled substance to or for any person who is not under his treatment for a pathology or condition and does so not in the regular practice of his profession is guilty of a crime.

"In order to be guilty of this crime, the defendant must know that he is not treating a pathology or condition when he issues the prescription.

"Whether or not the defendant acted in the course of the regular practice of his profession is a fact for you to decide in the light of all the evidence."

As justification for its position, respondent cites *People* v. *Demery* (1980) 104 Cal.App.3d 548, 557-558 [163 Cal.Rptr. 814], which found no instruc-tional error where the evidence established defendant was operating a drug mill. Respondent suggests that since there was no reference in *Demery* to a good faith defense, the good faith defense is not available and does not apply to alleged violations of section 11154. Such an extension of the hold-ing in *Demery* is untenable. ■■■ A case does not stand as precedent for an issue not considered by it. (*Palmer* v. *Ted Stevens Honda, Inc.* (1987) 193 Cal.App.3d 530, 539 [238 Cal.Rptr. 363]; *Brokopp* v. *Ford Motor Co.* (1977) 71 Cal.App.3d 841, 851 [139 Cal.Rptr. 888, 93 A.L.R.3d 537].) ■■■ The issue of good faith was never raised or considered by the defendant in *Demery.*

■■■ In this case the prosecution created a problem for the court and the jury by its decision to charge the same conduct as violations of both sections 11153 and 11154 of the Health and Safety Code. As the court noted during extensive discussions on jury instructions, the similarity between the two statutes and the resultant inability to explain the difference between them could present a problem for the jury. Nevertheless, the prosecutor elected to proceed on all counts charged and the court fashioned instructions on both statutes.

The sole defense was that appellant practiced medicine in good faith when he wrote the prescriptions for Withem and the undercover operators. ■ Health and Safety Code section 11210 is not limited in applicability to section 11153. If the defense of good faith was available to appellant for charges of violating section 11153, it is also available to defend charges of violating section 11154. (See *People* v. *Braddock* (1953) 41 Cal.2d 794, 801 [264 P.2d 521].) ■ The distinction that the prosecutor attempted to draw between the two statutes, that section 11153 applies to the issuance of the prescription itself and section 11154 applies to treatment for a nonexistent pathology, is cloudy at best.

Moreover, it appears that the trial judge intended to instruct the jury regarding the good faith defense as it related to section 11154 but neglected to do so. During discussions on proposed instructions outside the jury's presence, the judge remarked that section 11154 apparently requires the doctor to perform a good faith examination. He then asked the rhetorical question, "If he has made a good faith examination of the person, how can we say the person isn't under his treatment?" We think the court's colloquy reflects his unfulfilled intent to instruct the jury on the good faith defense to section 11154.

■ At present, the law in California is unclear regarding the applicable standard of review where a trial court fails to instruct on a defense which is supported by substantial evidence. (See *People* v. *Lee* (1987) 43 Cal.3d 666, 674-676, and fn. 1 [238 Cal.Rptr. 406, 738 P.2d 752]; *People* v. *Modesto* (1963) 59 Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33]; *People* v. *Sedeno* (1974) 10 Cal.3d 703, 720-721 [112 Cal.Rptr. 1, 518 P.2d 913]; *People* v. *Lemus* (1988) 203 Cal.App.3d 470, 478-480 [249 Cal.Rptr. 897].) The applicable standard is either (1) the prosecution must establish the error was harmless beyond a reasonable doubt (*Chapman* v. *California* (1976) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]), (2) the error is harmless if the factual question posed was necessarily resolved adversely to the defendant under other, properly given instructions (*People* v. *Sedeno, supra*), or (3) the error is reversible per se (*People* v. *Modesto, supra*). (See discussion in *People* v. *Lemus, supra.*)

■ In this case it is clear that regardless of the standard applied, the failure to instruct the jury on the defense of good faith prejudiced appellant. The sole defense presented was that appellant acted in good faith. His expert testified that his conduct was medically proper. In addition, appellant was acquitted on two counts of violating section 11154. The extent and nature of the defense and the acquittals reflect that had the jury been instructed on the defense of good faith as it related to section 11154, it might have acquitted appellant on counts IV and VIII.

When the jury was instructed on the violations of section 11153 appellant was entitled to instruction on the defense of good faith. It was given. As to the charges of violation of section 11154, appellant was equally entitled to instruction on the defense of good faith. It was not given. Accordingly, we are compelled to reverse the convictions for violations of section 11154 in counts IV and VIII.

### III.

### THE COURT PROPERLY INSTRUCTED THE JURY ON THE KNOWLEDGE ELEMENT OF THE HEALTH AND SAFETY CODE VIOLATIONS

Appellant contends that since sections 11153 and 11154 require "knowing" violations for a criminal conviction, in order to convict the prosecution must prove the defendant knew his conduct was a crime. Appellant's argument that the court committed reversible error when it refused to instruct the jury that if appellant did not know he was violating the law he did not possess criminal intent is without merit and contrary to law.

Violations of sections 11153 and 11154 are general intent crimes. Accordingly the court instructed the jury with a modification of CALJIC No. 3.30 in part as follows: "In the crime[s] charged . . . there must exist a union or joint operation of act or conduct and general criminal intent. To constitute general criminal intent it is not necessary that there should exist an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent, even though he may not know that his act or conduct is unlawful."

Penal Code section 7, subdivision 5 provides: "The word 'knowingly' imports only a knowledge that the facts exist which bring the act or omission within the provisions of this code. It does not require any knowledge of the unlawfulness of such act or omission."

It is well settled that the requirement of acting "knowingly" is satisfied when the person committing the act has knowledge of the facts although not of the law. (*Brown* v. *State Department of Health* (1978) 86 Cal.App.3d 548, 554 [150 Cal.Rptr. 344].) "Knowingly" does not require knowledge of the unlawfulness of the act itself. (*Fort* v. *Board of Medical Quality Assurance* (1982) 136 Cal.App.3d 12, 21 [185 Cal.Rptr. 836].) When used in a criminal statute, the word "knowing" imports only an awareness of the facts which bring the act within the terms of the statute. (*People* v. *Calban* (1976) 65 Cal.App.3d 578, 584 [135 Cal.Rptr. 441].)

■ The trial court appropriately gave CALJIC No. 1.21 (4th ed. 1979). It defines "knowingly" in accord with California law. Appellant's proposed instruction, which required the prosecution to prove and the jury to find that appellant knew the law as well as the facts when he acted, was properly rejected.

IV.

### There Was Sufficient Evidence to Support the Conviction

■ Since appellant's argument that the prosecution must prove his knowledge of the law has failed, his contention that there was insufficient evidence to support the conviction because of the absence of proof of his knowledge of the law is also without merit. We note, however, that there was ample evidence to support the conviction. Appellant prescribed schedule III drugs to Withem and two undercover operators. The evidence, both prosecution and defense, established he knew the prescriptions were not being issued for legitimate medical purposes in the usual course of professional treatment. We conclude that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 562 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

The convictions on counts I, III and VII are affirmed. The convictions on counts IV and VIII are reversed.

Scoville, P. J., and Wallin, J., concurred.

A petition for a rehearing was denied April 23, 1990, and appellant's petition for review by the Supreme Court was denied June 27, 1990.