[No. A054791. First Dist., Div. Four. Dec. 19, 1991.]

JOHN D. PERZIK, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for publication with the exception of part I.

## COUNSEL

Carey & Carey, Robert E. Carey, Jr., and Jerry Y. Fong for Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Ronald S. Matthias and Martin S. Kaye, Deputy Attorneys General, for Respondent and for Real Party in Interest.

## OPINION

**ANDERSON, P. J.**—Subdivision (a) of Health and Safety Code[1] section 11379 specifies criminal liability for every person who (among other things) "sells, furnishes, administers, or gives away . . . any controlled substance . . . which is not a narcotic drug . . . unless upon the prescription of a physician . . . licensed to practice in this state." We hold that a physician who prescribes and, pursuant to that prescription, sells a controlled substance without a legitimate medical purpose can be tried for violating section 11379.

---

[1]Statutory references are to this code unless otherwise indicated.

## BACKGROUND

Petitioner John D. Perzik is a physician licensed to practice in this state. In the summer of 1990 two undercover police officers—one male, one female—came to petitioner's office posing as patients asking for anabolic steroids. The woman told petitioner that she had previously taken steroids and wanted to resume their use to enhance her physical appearance and a body-building regimen. The man told petitioner that he wanted steroids for body-building and weight lifting. Petitioner made four sales of steroid tablets to the officers.[2] Petitioner kept no record of these transactions.

These events led to petitioner being charged with four violations of section 11379. Four violations of section 11153[3] were charged in the alternative.

At petitioner's preliminary examination the prosecution presented evidence of the undercover officers' activities and the testimony of Dr. Jeffrey Tanji. A faculty member of the department of family practice at the University of California at Davis, the director of that institution's sports medicine clinic, and its sports medicine fellowship program, Dr. Tanji has taught, lectured, and written on the subject of anabolic steroids. He testified concerning the substantial risks entailed by steroid use; the very limited circumstances in which their use might be appropriate; and the fact that physicians had all but entirely ceased prescribing them. Answering hypothetical questions that replicated the situations of the undercover officers' requests to petitioner for steroids, Dr. Tanji gave his expert opinion that steroid use would not have legitimate medical purposes.[4]

The magistrate ordered petitioner held to answer only on the charges that he had violated section 11153. The prosecution nevertheless filed an eight-count information, charging violations of sections 11379 and 11153 as "different statements of the same offense" for each of the four sales allegedly made by petitioner to the undercover officers. Petitioner then moved for an order setting aside those counts of the information charging violations of

---

[2]On two of these occasions petitioner provided the tablets from his automobile.
Anabolic steroids are schedule III controlled substances. (§ 11056, subd. (f).)

[3]Subdivision (a) of which provides in pertinent part: "A prescription for a controlled substance shall only be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his or her professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner . . . ."

[4]Dr. Tanji testified that in approximately 1986 the California Medical Board (to use its current title) issued a written opinion to the effect that, in Dr. Tanji's words, "it is not the standard of care and . . . not appropriate for physicians within the State of California to prescribe anabolic steroids for the purposes of body building, or enhancement of appearance."

section 11379. Citing *Baker* v. *Superior Court* (1972) 24 Cal.App.3d 124 [100 Cal.Rptr. 771], petitioner argued that as a licensed physician his prescriptions to the officers were exempted from the ambit of section 11379. Following respondent court's denial of his motion, petitioner applied to this court for a writ of prohibition. We ordered issuance of an alternative writ and a stay of the criminal proceedings against petitioner.

DISCUSSION

I*

. . . . . . . . . . . . . . . . . . . . . . . . . .

II

Petitioner mistakenly insists that *Baker* v. *Superior Court, supra,* 24 Cal.App.3d 124 guarantees him victory. *Baker* terminated criminal proceedings against a physician when a divided court rejected the prosecution's argument that the physician's acts of prescribing were equivalent to the furnishing and selling prohibited by the predecessor version of section 11379. The *Baker* majority based its conclusion on (1) the factual circumstance that "no drugs were ever obtained by means of the[ ] prescriptions" written by the physician, and (2) a legal examination of the statutory scheme that differentiated between narcotics and what were then classified as restricted dangerous drugs. (See 24 Cal.App.3d at pp. 126-127.) Here, controlled substances were obtained from petitioner. Moreover, subsequent to *Baker* the Legislature enacted a massive reorganization of the statutory scheme, thereby largely obliterating the distinction between narcotics and all other controlled substances. (See Stats. 1972, ch. 1407, § 3, p. 2987.) For these reasons, *Baker* cannot be regarded as dispositive.

What is dispositive are statutory language and legislative intent. (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 208-209 [271 Cal.Rptr. 191, 793 P.2d 524].) Section 11379 forbids "every person" from doing the acts specified therein "unless upon the prescription" of a licensed medical professional. "Physicians are not excluded from the definition of the word 'person' and it is apparent that all persons, including physicians, are thereby forbidden under liability of criminal prosecution to furnish or sell any [nonnarcotic controlled substance] except as otherwise provided in the statute." (*People* v. *Jackson* (1951) 106 Cal.App.2d 114, 117 [234 P.2d 766].)

The statutory scheme clearly makes provision for illegitimate distribution of controlled substances. Persons who have lawful possession of controlled

*See footnote, *ante*, page 898.

substances are not immune to prosecution if improper motives intrude. This is true for pharmaceutical wholesalers (*People* v. *Kessler* (1967) 250 Cal.App.2d 642, 645 [58 Cal.Rptr. 766]), pharmacists (*People* v. *Silver* (1959) 176 Cal.App.2d 377, 379-380 [1 Cal.Rptr. 179]), physicians (*People* v. *Braddock* (1953) 41 Cal.2d 794, 800-801 [264 P.2d 521]; *People* v. *Gard* (1978) 76 Cal.App.3d 998, 1001-1002, 1004 [143 Cal.Rptr. 346]; *People* v. *Jackson*, *supra*, 106 Cal.App.2d 114; *People* v. *Kinsley* (1931) 118 Cal.App. 593, 597-598 [5 P.2d 938]), or even a patient "who has obtained a drug by prescription but possesses the drug for sale to another without prescription." (*People* v. *Hunt* (1971) 4 Cal.3d 231, 236 [93 Cal.Rptr. 197, 481 P.2d 205].)

Section 11210 states the general principle that a physician "may prescribe for, furnish to, or administer controlled substances to his patient" but "only when in good faith he believes . . . such treatment" is required. The language of section 11153 that "[a] prescription for a controlled substance shall only be issued for a legitimate medical purpose" restates the principle in slightly different form. The physician's good faith can be asserted as a defense to issuing a prescription without "a legitimate medical purpose" (see *People* v. *Lonergan* (1990) 219 Cal.App.3d 82, 89-92 [267 Cal.Rptr. 887]) or, as with the charges against petitioner, if the physician goes one step further and actually provides the controlled substances. (See *People* v. *Jackson*, *supra*, 106 Cal.App.2d at pp. 118, 123-124; *People* v. *Kinsley*, *supra*, 118 Cal.App. at pp. 597-598.) But a license to practice medicine is not a blanket exemption from valid criminal laws otherwise applicable to all persons. (See *People* v. *Jackson*, *supra*, at p. 118 ["The applicable provisions of the Health and Safety Code, section 11000 et seq., do not exempt a physician from prosecution for unlawful sale of narcotics"]; *People* v. *Kinsley*, *supra*, at pp. 597-598 ["from the fact that he is a physician so licensed, it does not necessarily follow that he had the legal right under all circumstances to sell . . . narcotics"].) As our Supreme Court concluded in a similar situation, "No such result could have been intended by the Legislature." (*People* v. *Braddock*, *supra*, 41 Cal.2d at p. 800.)

The phrasing of the exemption employed in section 11379—"upon the prescription of a physician"—imports the existence of the physician-patient relationship. The most important characteristic of that relationship is the physician using best efforts and expertise to promote the patient's total health. Because the concepts of "good faith" and "legitimate medical purpose" are inherent limitations restricting the physician's authority to prescribe for controlled substances, the absence of express language to these

effects in section 11379 is not of particular importance.[6] An obvious aim of section 11379, as well as the entire Uniform Controlled Substances Act (§ 11000 et seq.), is "to prevent one having access to [controlled substances] from making them available, other than for a legitimate purpose, to one under treatment . . . ." (*People* v. *Braddock, supra,* 41 Cal.2d at p. 801.)

It would require an exceptionally strong showing for this court to accept that a physician granted the public trust of access to controlled substances should, if that trust be abused or betrayed, be treated differently from the most venal street-corner pusher. Petitioner has not made such a showing.

The alternative writ of prohibition is discharged, and the petition for a peremptory writ is denied. The stay heretofore issued is dissolved.

Poché, J., and Perley, J., concurred.

---

[6]Petitioner makes much of the first sentence of subdivision (a) of section 11153 (quoted at fn. 3, *ante*), and its absence from section 11379. This is much ado about nothing. Unlike the normal situation where a prescription is written by a physician for a patient who has the prescription filled by a pharmacist (see *Baker* v. *Superior Court, supra,* 24 Cal.App.3d at p. 126), the evidence adduced at the preliminary examination shows that petitioner was in effect ordering a prescription he himself would provide. (See § 11250.) In such a situation it seems foolish to limit the "legitimate medical purpose" obligation of section 11153 to the metaphysically distinct first part of this transaction.