[No. B051942. Second Dist., Div. One. Dec. 23, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
SURESH GANDOTRA et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

_____
\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III through V.

**COUNSEL**

Dennis A. Fischer and Alan S. Yockelson for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, William T. Harter and Zaven V. Sinanian, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ORTEGA, J.**—Defendant Suresh Gandotra, M.D., operated a medical clinic in Los Angeles County. An undercover investigation by the Bureau of Medi-Cal Fraud and Patient Abuse of the California Department of Justice revealed Dr. Gandotra had falsely billed Medi-Cal for patients who either were not treated or were treated by unlicensed medical assistants in violation of Medi-Cal regulations and state licensing laws.

In the published portion of the opinion, we discuss Dr. Gandotra's convictions of aiding and abetting his unlicensed assistant in the prescribing and

furnishing of controlled substances (Health & Saf. Code, §§ 11153, subd. (a) [counts 6, 10], 11352 subd. (a) [count 8]). Dr. Gandotra contends these counts must be reversed because there was no evidence at trial that the challenged prescriptions and medications were medically inappropriate treatments of the symptoms described by the undercover agents to the unlicensed assistant. Dr. Gandotra argues that, on this record, had he personally prescribed and furnished the medications, he could not have been charged under these statutes. We uphold the convictions on these counts.

In the unpublished portion of the opinion, we modify the judgment against Dr. Gandotra by striking some fines imposed in violation of Penal Code section 654. We affirm the judgments as modified.[1]

## BACKGROUND

It is undisputed that Dr. Gandotra hired three unlicensed medical assistants (Carlos Cuellar, Ricardo Santos, and Winston Saunders) to provide medical care to Medi-Cal patients at Dr. Gandotra's clinic. The assistants were not licensed in California to practice medicine or write prescriptions, and they were not authorized Medi-Cal providers.

Based on the medical services provided by the unlicensed assistants, Dr. Gandotra billed Medi-Cal under his own provider number for their unauthorized services. Substantial evidence established that Dr. Gandotra also presented Medi-Cal claims for services that were never rendered. Rita Gandotra, Dr. Gandotra's wife, processed some of the clinic's false Medi-Cal claims.

As a result of their fraudulent Medi-Cal billing, Dr. Gandotra and his wife were charged with and convicted of the following felonies: Medi-Cal fraud (Welf. & Inst. Code, § 14107 [counts 11-15]), grand theft (Pen. Code, § 487, subd. (1) [count 16]), and conspiracy to defraud (Pen. Code, § 182, subd. (a)(4) [count 17]). They do not challenge the sufficiency of the evidence to support their convictions on these counts.

During the investigation which led to this prosecution, five undercover agents posing as Medi-Cal patients received either forged controlled substance prescriptions (signed with Dr. Gandotra's name) or small quantities of controlled substances from Dr. Gandotra's unlicensed medical assistants. As

---

[1]We filed our original opinion on this appeal on August 26, 1992. Thereafter, all parties requested that we publish the opinion, and the defendants petitioned for a rehearing. We granted the rehearing petition on September 10, 1992, modified our opinion without further argument, and partially granted the publication request.

a result of the medical treatments, prescriptions, and medications provided to the agents by the unlicensed assistants, Dr. Gandotra was charged with and convicted of aiding and abetting the unlicensed assistants in: (1) practicing medicine without a license (Bus. & Prof. Code, § 2052 [counts 2, 9, misdemeanors]); (2) forging prescriptions (Bus. & Prof. Code, § 4390 [counts 1, 3, 5, 7, felonies]); and (3) distributing and prescribing controlled substances in violation of state law (Bus. & Prof. Code, § 4227 [count 4, a misdemeanor]; Health & Saf. Code, § 11153, subd. (a) [counts 6, 10, felonies]; Health & Saf. Code, § 11352 [count 8, a felony]).

ISSUES

Dr. Gandotra contends his convictions of aiding and abetting an unlicensed assistant to (I) prescribe (counts 6, 10) and (II) dispense (count 8) controlled substances must be reversed.

Both defendants contend: (III) the trial court abused its discretion by failing to discharge a juror who became unable to perform his duty during deliberations; (IV) counts 11 through 15 (Medi-Cal fraud) must be reversed due to instructional errors; and (V) the trial court erred in imposing fines against Dr. Gandotra.

DISCUSSION

I

We find the jury properly convicted Dr. Gandotra of aiding and abetting Ricardo Santos, an unlicensed medical assistant, in prescribing controlled substances to Agents Milne (count 6, Diazepam) and Blair (count 10, Fiorinal with codeine No. 3) in violation of Health and Safety Code section 11153, subdivision (a).[2] We conclude there was sufficient evidence to support these verdicts and find no instructional error.

A. *Count 6*

Agent Milne, posing as patient Scott, went to the clinic and complained of sleeplessness and itching. Santos examined Milne and forged Dr. Gandotra's signature on a prescription for Diazepam, or Valium, a schedule IV controlled substance (§ 11057, subd. (d)(7)). As a result of Santos's unlicensed treatment of Agent Milne, Dr. Gandotra was convicted of aiding and abetting Santos in (1) forging a prescription (Bus. & Prof. Code, § 4390, [count 5]),

[2]Unless otherwise indicated, all statutory references in parts I and II are to the Health and Safety Code.

and (2) issuing an unlawful prescription for a controlled substance (§ 11153, [count 6]).

The trial court fined Dr. Gandotra $10,000 on count 5 and $20,000 on count 6. In the unpublished portion of the opinion, we stay the fine imposed on count 5 in violation of Penal Code section 654.

### B. *Count 10*

Agent Blair went to the clinic posing as patient West and complained of a headache. Santos examined West and forged Dr. Gandotra's signature on a prescription for Fiorinal with codeine No. 3, a schedule III controlled substance (§ 11056, subd. (e)). As a result of Santos's unlicensed treatment of Agent Blair, Dr. Gandotra was convicted of aiding and abetting Santos in unlawfully prescribing a controlled substance (§ 11153, subd. (a) [count 10]), and was fined $20,000.

### C. *Section 11153 Bars Unlicensed Assistants From Writing Controlled Substance Prescriptions*

Section 11153, subdivision (a) states: "A prescription for a controlled substance shall only be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his or her professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. Except as authorized by this division, the following are not legal prescriptions: (1) an order purporting to be a prescription which is issued not in the usual course of professional treatment or in legitimate and authorized research; or (2) an order for an addict or habitual user of controlled substances, which is issued not in the course of professional treatment or as part of an authorized methadone maintenance program, for the purpose of providing the user with controlled substances, sufficient to keep him or her comfortable by maintaining customary use."

Section 11153, subdivision (b) states: "Any person who knowingly violates this section shall be punished by imprisonment in the state prison or in the county jail not exceeding one year, or by a fine not exceeding twenty thousand dollars ($20,000), or by both a fine and imprisonment."

Section 11153 is part of the 1972 Uniform Controlled Substances Act (§ 11000 et seq. [the Act]) which is division 10 of the Health and Safety Code. Subdivision (a) of section 11153 states that only "practitioners" may

issue prescriptions for controlled substances. "Practitioner," as defined elsewhere in the Act, includes doctors, dentists, veterinarians, podiatrists, and, in specified instances, pharmacists, registered nurses, and physician's assistants acting within the scope of authorized projects. (§ 11026.)

Subdivision (b) of section 11153 describes the punishment that may be imposed against any "person" who violates subdivision (a). "Person," as defined elsewhere in the Act, "means individual, corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership, or association, or any other legal entity." (§ 11022.)

According to the prosecution's trial theory, Santos was the unlicensed "person" who violated section 11153 by knowingly issuing forged prescriptions for controlled substances. Dr. Gandotra, who gave Santos the prescription blanks bearing Dr. Gandotra's name and registry number, was the "person" who aided and abetted Santos in writing the illegal prescriptions.

On appeal, Dr. Gandotra contends neither he nor Santos may be convicted under section 11153. According to Dr. Gandotra, Santos is immune from prosecution because "section 11153 has been 'limited to physicians and pharmacists' (*People* v. *Anderson* [(1972)] 29 Cal.App.3d 551, 561 [105 Cal.Rptr. 664])." And since Santos could not have violated the statute, Dr. Gandotra contends he cannot be guilty of having aided and abetted Santos.

The referenced passage in *People* v. *Anderson* (1972) 29 Cal.App.3d 551, 561 [105 Cal.Rptr. 664], however, concerned a different statute, former section 11162.5, which was repealed by the Act. Former section 11162.5 provided: " 'A prescription, in order to be effective in legalizing the possession of unstamped narcotic drugs and eliminating the necessity for use of order forms, must be issued for legitimate medical purposes. The responsibility for the proper prescribing and dispensing of narcotic drugs is upon the practitioner, but a corresponding liability rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued to an addict or habitual user of narcotics, not in the course of professional treatment but for the purpose of providing the user with narcotics sufficient to keep him comfortable by maintaining his customary use, is not a prescription within the meaning and intent of this division; and the person filling such an order, as well as the person using it, may be charged with violation of the law.' [Italics omitted.]" (*People* v. *Anderson*, *supra*, 29 Cal.App.3d at p. 559.)

In rejecting the defendant's claim in *Anderson* that the last sentence of section 11162.5 was unconstitutionally vague, the appellate court stated:

"[W]e conclude that . . . section 11162.5, *by its terms limited to physicians and pharmacists*, is sufficiently certain and not unconstitutionally vague." (*People* v. *Anderson, supra*, 29 Cal.App.3d at p. 561, italics added.)

The *Anderson* court's dictum that former section 11162.5 was by its terms limited to physicians and pharmacists is neither controlling nor relevant to our determination of the broader scope of section 11153. When the Act was adopted in 1972, it replaced former division 10, Narcotics, which was enacted in 1939. (Stats. 1939, ch. 60, p. 755.) Parts of former division 10 were in turn derived from the 1929 "act to regulate the sale, possession, distribution and use of habit forming, narcotic and other dangerous drugs and substances, and providing penalties for the violation thereof." (Stats. 1929, ch. 216, p. 380.)

Section 1 of the 1929 act provided in relevant part: "No person, other than a physician, dentist or veterinary surgeon, duly licensed to practice in this state, shall write any prescription for any of the drugs mentioned in this section . . . ." (Stats. 1929, ch. 216, § 1, p. 381.) In addition, section 1 provided in relevant part: "It shall be unlawful for any practitioner of medicine, dentistry or veterinary medicine or any other person to . . . prescribe, administer to or furnish any of the foregoing substances for himself or any person not in the regular practice of his profession . . . ." (Stats. 1929, ch. 216, § 1, p. 382.)

Section 6 of the 1929 act made a violation of section 1 punishable by imprisonment for not less than six months nor more than six years for the first offense, and by imprisonment for not less than one year nor more than ten years for the second offense. (Stats. 1929, ch. 216, § 6, p. 385.)

Reading section 11153 as a whole, we conclude the statute by its clear and unambiguous terms (1) prohibits nonpractitioners from writing controlled substance prescriptions, and (2) prohibits practitioners from writing controlled substance prescriptions that have no legitimate medical purpose and that are outside the course of their usual professional practice. These crimes have been on the books since at least the 1929 act.

■ We reject Dr. Gandotra's assertion that his section 11153 convictions have rendered section 11150 superfluous. Section 11150 states: "No person other than a physician, dentist, podiatrist, or veterinarian . . . shall write or issue a prescription." Notably, section 11150 does not specify any criminal punishment for a violation of its terms.

Section 11153 is a more specific statute than section 11150. Section 11153, unlike section 11150, sets forth the criminal punishment which may

be imposed against any person who knowingly violates its terms. It thus appears that the Legislature intended to make the conduct described in subdivision (a) of section 11153 a crime without resort to section 11150, a more general statute which covers the same matter as section 11153. Accordingly, we distinguish *People* v. *Superior Court (Douglass)* (1979) 24 Cal.3d 428, 434 [155 Cal.Rptr. 704, 595 P.2d 139], which is relied upon by Dr. Gandotra.

In *Douglass*, a Business and Professions Code section which described unprofessional conduct without specifying a criminal punishment was held not to constitute a misdemeanor made punishable by an omnibus penalty section covering other sections which did not specify a penalty. The *Douglass* majority concluded that the omnibus penalty section was "reasonably susceptible of a construction that would exclude from its reach an act or omission which is declared only to be 'unprofessional conduct' and is not expressly described as a violation or crime. . . . [T]he construction urged by the People, whereby [the omnibus penalty section] would make criminal acts or omissions specified as 'unprofessional conduct,' would render superfluous those provisions previously noted which expressly state that such conduct is criminal." (24 Cal.3d at p. 434.)

Here, on the other hand, section 11153, a more specific statute which imposes a criminal penalty for the same conduct proscribed by section 11150, may be considered an exception to section 11150 under the "supplanting" doctrine. (*People* v. *Pangelina* (1981) 117 Cal.App.3d 414, 422, fn. 4 [172 Cal.Rptr. 661].) "The controlling principles are set forth in *In re Williamson* (1954) 43 Cal.2d 651, at page 654 [276 P.2d 593] as follows: ■ ' "It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. Where the special statute is later it will be regarded as an exception to or qualification of the prior general one; and where the general act is later the special statute will be considered as remaining an exception to its terms unless it is repealed in general words or by necessary implication." ' " (*Lyons* v. *Municipal Court* (1977) 75 Cal.App.3d 829, 839 [142 Cal.Rptr. 449].)

Moreover, we further distinguish *People* v. *Superior Court (Douglass)*, *supra*, 24 Cal.3d 428, 434, on the ground that section 11153 contains no ambiguity and leaves no doubt as to its meaning. ■ In construing a Penal Code section, "appellate courts first examine the language of the code section to determine whether the words used unequivocally express the Legislature's intent. If no ambiguity, uncertainty, or doubt about the meaning of the statute appear, the provision is to be applied according to its terms

without further judicial construction. [Citation.] [¶] When the language of the section is on its face ambiguous or leaves doubt, however, the court must resort to extrinsic aids to ascertain the purpose behind the statute and give the provision a judicially created meaning commensurate with that purpose. [Citations.]" (*Morse* v. *Municipal Court* (1974) 13 Cal.3d 149, 156 [118 Cal.Rptr. 14, 529 P.2d 46]; *In re Andrews* (1976) 18 Cal.3d 208, 212 [133 Cal.Rptr. 365, 555 P.2d 97].)

Applying these rules here, we conclude the statutory language of section 11153 is conclusive. In a somewhat analogous situation, a minor who was found to have violated Penal Code section 288 (committing a lewd and lascivious on a child under age 14) and who was declared a ward of the juvenile court (Welf. & Inst. Code, § 602), challenged the application of Penal Code section 272, which "provides that '[e]very person' who commits an act which causes or encourages any person under the age of 18 years to become delinquent is guilty of a misdemeanor." (*In re James P.* (1981) 115 Cal.App.3d 681, 685 [171 Cal.Rptr. 466].)

The *James P.* court rejected the minor's contention that Penal Code section 272 applies only to adult offenders, stating: "A statute free from ambiguity and uncertainty needs no interpretation. [Citations.] Interpretaton of a statute is for the purpose of ascertaining the legislative will. When this is clear, interpretation is not permitted. [Citation.] The term '[e]very person,' as used in Penal Code section 272, is all-inclusive. It includes everyone, irrespective of whether the person is an adult or a minor. [Citation.] The term is specific, free from ambiguity, and therefore not subject to any construction other than a literal one." (*In re James P.*, *supra*, 115 Cal.App.3d at p. 685.)

In this case, section 11153, subdivision (b), uses the similarly unambiguous and all-inclusive term, "[a]ny person." The term includes everyone, regardless of whether the person is licensed or unlicensed to write prescriptions. The term "is specific, free from ambiguity, and therefore not subject to any construction other than a literal one." (*In re James P.*, *supra*, 115 Cal.App.3d at p. 685.)

### D. *The Other Section 11153 Decisions Are Not Controlling*

By stating that controlled substance prescriptions "shall only be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his or her professional practice" (§ 11153, subd. (a)), the Legislature has banned the writing of prescriptions by unlicensed assistants, without regard to whether the prescriptions were medically appropriate.

We acknowledge that the previously published section 11153 decisions did not involve prosecutions of licensed physicians for aiding and abetting their unlicensed assistants to violate the statute. They generally involved prosecutions either of licensed physicians for prescribing controlled substances to addicts (or undercover agents posing as addicts) without any legitimate medical purpose or appropriate medical examinations (see *People* v. *Lonergan* (1990) 219 Cal.App.3d 82, 89-92 [267 Cal.Rptr. 887]; *People* v. *Anderson, supra,* 29 Cal.App.3d at pp. 555-556), or of licensed pharmacists for indiscriminately filling controlled substance prescriptions not intended for a legitimate medical purpose (see *Vermont & 110th Medical Arts Pharmacy* v. *Board of Pharmacy* (1981) 125 Cal.App.3d 19, 22-25 [177 Cal.Rptr. 807]).

The prior section 11153 decisions do not require or persuade us to conclude the statute may not be used to prosecute licensed physicians who aid and abet unlicensed assistants to write illegal prescriptions. As previously explained, the plain language of section 11153 is broader in scope than the reported decisions alone might suggest. As we read the unambiguous language of subdivisions (a) and (b) of section 11153, nonpractitioners may not issue even medically appropriate controlled substance prescriptions.

Had Dr. Gandotra, rather than Santos, written the challenged prescriptions, the prosecution's failure to prove the absence of a legitimate medical purpose would have been fatal. But because an unlicensed individual, rather than Dr. Gandotra, wrote the prescriptions, whether or not the prescriptions were medically appropriate is irrelevant.

We find nothing absurd about applying section 11153 literally in this case. (See *Isaac* v. *Superior Court* (1978) 79 Cal.App.3d 260, 264 [146 Cal.Rptr. 396] ["Where the legislative intent is clear, penal statutes must be construed reasonably to effectuate such intent. They should not be read literally where to do so would lead to absurd consequences. [Citations.]"].) The fact that Dr. Gandotra and Santos intended and caused no harm to their unsuspecting Medi-Cal patients does not make the application of section 11153 absurd. Since at least 1929, California has made it a crime for an unlicensed person to issue controlled substance prescriptions. The medical licensing board, not an individual physician-employer, must determine an employee's qualifications to issue controlled substance prescriptions. Whether the unlicensed assistants, by luck or by skill, issued appropriate prescriptions in this case is not determinative of whether Santos, with Dr. Gandotra's assistance, violated section 11153. The adoption of Dr. Gandotra's position essentially would repeal the prohibition against unlicensed medical practice unless the treatment harmed a patient. We think the Legislature properly could take the

safer course and proscribe *any* unlicensed medical practice, even if the treatment did not injure the patient.

We find the verdicts on counts 6 and 10 are supported by substantial evidence.

### E. *Instructional Error*

Dr. Gandotra next contends the trial court erroneously instructed the jury as follows: "The defendant Dr. Gandotra is charged in counts 6 and 10 of the information with having committed the crime of aiding and abetting in the issuance of a prescription for a controlled substance without legitimate medical purpose while not acting in the usual course of the medical practice, a violation of Section 11153(a) . . . which states:

"Any person who knowingly issues a prescription for a controlled substance other than for a legitimate medical purpose while not acting in the usual course of the medical practice, is guilty of the crime of prescribing a controlled substance without legitimate medical purpose, a felony[.]

"In order to prove the crime, each of the following elements must be proved:

"1. That a person knowingly issued a prescription for a controlled substance;

"2. That a person was not acting in the usual course of the medical practice when the prescription for a controlled substance was issued;

"3. That the defendant Dr. Gandotra aided and abetted in the issuance of a prescription for a controlled substance(s), in violation of Section 11153(a) . . . . "

▮ Dr. Gandotra contends this instruction was erroneous for two reasons. First, practitioners are the only persons within the ambit of section 11153, which does not reach any other persons as was erroneously implied in the instruction. And second, the instruction omitted an essential element of a section 11153 violation—the absence of a legitimate medical purpose in prescribing the drugs.

We previously discussed and rejected both of these contentions. Accordingly, we find no instructional error.

## II

Dr. Gandotra was convicted on count 8 for aiding and abetting Santos in furnishing an undercover agent with two tablets containing Tylenol with

codeine No. 3, a schedule III controlled narcotic drug (§ 11056, subd. (e)), in violation of section 11352, subdivision (a). ██ Dr. Gandotra contends count 8 must be reversed because section 11352 was aimed at curbing illicit drug trafficking and not the mere dispensing of two common analgesic tablets. We disagree.

Agent McSween, posing as patient Smith, went to the clinic and complained of an earache. Santos examined Smith and signed Dr. Gandotra's name on prescriptions for eardrops, an antibiotic, and Tylenol with codeine No. 3, a schedule III controlled substance (§ 11056, subd. (e)). When Smith said she needed something for her immediate pain, Santos gave her two tablets of Tylenol with codeine No. 3.

As a result of Santos's treatment of Agent McSween, Dr. Gandotra was charged with and convicted of aiding and abetting Santos in (1) forging a prescription (Bus. & Prof. Code, § 4390; count 7); (2) unlawfully furnishing a controlled substance (Health & Saf. Code, § 11352; count 8); and (3) practicing medicine without a license (Bus. & Prof. Code, § 2052; count 9).

The trial court fined Dr. Gandotra $10,000 on count 7, $20,000 on count 8, and $1,000 on count 9. In the unpublished portion of the opinion, we stay the multiple fines imposed on counts 7 and 9 in violation of Penal Code section 654.

Section 11352, subdivision (a) provides in relevant part: "Except as otherwise provided in this division, every person who transports, imports into this state, sells, furnishes, administers, or gives away. . . (2) any controlled substance classified in Schedule III . . . which is a narcotic drug, unless upon the written prescription of a physician . . . licensed to practice in this state, shall be punished by imprisonment in the state prison for three, four, or five years."

Dr. Gandotra contends his conviction under this narcotics trafficking statute "is nothing short of absurd," since the two common analgesic tablets were issued in good faith to a "patient" who had complained of an earache. Dr. Gandotra asserts an exception must be allowed for the good faith furnishing of two common analgesic tablets following a medical examination by a foreign medical graduate.

In our view, however, Dr. Gandotra's license to practice medicine does not make him immune from prosecution under section 11352 for aiding and abetting an unlicensed person to dispense a controlled substance. Section 11352's exception for prescriptions by licensed physicians would only be

applicable if Dr. Gandotra personally had prescribed and dispensed the controlled substance to Agent McSween.

We distinguish *Baker* v. *Superior Court* (1972) 24 Cal.App.3d 124 [100 Cal.Rptr. 771], upon which Dr. Gandotra relies. In *Baker*, a licensed physician was charged with violating former section 11912 (now § 11379) by writing prescriptions (which were never filled) for restricted dangerous drugs upon request without first examining the "patients" (who were undercover agents) to establish a medical necessity. Former section 11912 punished, among other things, the furnishing of " 'any restricted dangerous drug, except upon the prescription' " of a physician. (*Baker* v. *Superior Court*, *supra*, 24 Cal.App.3d at p. 126.) The majority in *Baker* concluded a physician may not be prosecuted under former section 11912 for prescribing a restricted dangerous drug without a medical examination.

Recently, another appellate court disagreed with the *Baker* majority opinion and held that "a physician who prescribes and, pursuant to that prescription, sells a controlled substance without a legitimate medical purpose can be tried for violating section 11379 [(former section 11912)]." (*Perzik* v. *Superior Court* (1991) 2 Cal.App.4th 898, 899 [4 Cal.Rptr.2d 1].) The *Perzik* court concluded *Baker* was not dispositive for two reasons: "The *Baker* majority based its conclusion on (1) the factual circumstance that 'no drugs were ever obtained by means of the[] prescriptions' written by the physician, and (2) a legal examination of the statutory scheme that differentiated between narcotics and what were then classified as restricted dangerous drugs. [Citation.] Here, controlled substances were obtained from petitioner. Moreover, subsequent to *Baker* the Legislature enacted a massive reorganization of the statutory scheme, thereby largely obliterating the distinction between narcotics and all other controlled substances. (See Stats. 1972, ch. 1407, § 3.)" (*Perzik* v. *Superior Court*, *supra*, 2 Cal.App.4th at p. 901.)

We agree with the *Perzik* court's analysis of *Baker* and find that *Baker* is not dispositive of this case. Here, as in *Perzik* and unlike *Baker*, the undercover agent actually received a controlled substance. While there was no evidence that the drug in this case was medically inappropriate, the statute does not require such evidence when the charge is based on the furnishing of a controlled substance by an unlicensed person. Section 11352 specifically forbids "every person" from distributing controlled substances "unless upon the written prescription of a physician . . . licensed to practice in this state." " 'Physicians are not excluded from the definition of the word "person" and it is apparent that all persons, including physicians, are thereby forbidden under liability of criminal prosecution to furnish or sell any

[nonnarcotic controlled substance] except as otherwise provided in the statute.' [Citation.]" *Perzik* v. *Superior Court, supra,* 2 Cal.App.4th at p. 901.)

Dr. Gandotra may not rely on the medical appropriateness of Santos's illegal prescription to escape liability under section 11352 because Santos is not a licensed physician. Section 11158, subdivision (a) provides, among other things, that "no controlled substance classified in Schedule III . . . may be dispensed without a prescription meeting the requirements of this chapter." It is undisputed that Santos dispensed a schedule III drug (Tylenol with codeine No. 3) without meeting the statutory requirements.

We reject Dr. Gandotra's assertion that his "conduct in aiding and abetting Santos did not fall outside the scope of a physician's legitimate and usual course of practice in diagnosing and treating patients . . . ." There is no authority for the proposition that physicians may permit unlicensed medical assistants to prescribe controlled substances on the physician's official blank prescription forms and distribute small quantities of such controlled substances. The jury was entitled to find that Dr. Gandotra's conduct in aiding and abetting Santos constituted a violation of the statute.

We also reject Dr. Gandotra's assertion that his conviction under section 11352 "push[ed] the criminal law beyond legitimate reason." Codeine No. 3 is without doubt a controlled substance, and the statute on its face prohibits the dispensing of a controlled substance without a valid prescription by a licensed physician. The Legislature did not exempt (as it could have) all licensed physicians from section 11352. Instead, the statute by its terms reaches "every person." For the reasons stated in part I, we conclude the unambiguous term needs no construction and should be applied literally.

III-V*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

DISPOSITION

We modify the judgment against Dr. Gandotra by staying the fines and penalty assessments imposed on counts 2, 5, 7, 9, and 11 through 15, and direct the trial court on remand to recalculate the new total of fines and

*See footnote, *ante,* page 1355.

assessments owed. As modified, the judgments against both defendants are affirmed.

Spencer, P. J., and Vogel, J., concurred.

Appellants' petition for review by the Supreme Court was denied April 21, 1993.